In the Matter of the Accounting of RALPH ASKER, as Committee of the Person and Estate of LEONARD ASKER, an Incompetent Person, Respondent. DEPARTMENT OF MENTAL HYGIENE OF THE STATE OF NEW YORK, Appellant.

Fourth Department, October 27, 1954.

*Nathaniel L. Goldstein, Attorney-General (Margaret D. Hazel, Wendell P. Brown* and *E. David Kiley* of counsel), for appellant.

*Walter H. Edson* for respondent.

KIMBALL, J. On July 9, 1952, Leonard Asker, an aged man, was committed to the Gowanda State Hospital. This is one of the State hospitals named in section 60 of the Mental Hygiene Law, " for the care and treatment of the poor and indigent mentally ill of the state; but other mentally ill persons, who are residents of the state, may be admitted when there is room therein for them ". On October 9, 1952, Ralph Asker, son and sole next of kin of Leonard Asker, was duly appointed committee of the person and estate of his father, the adjudged incompetent person. The estate of the incompetent, consisting of real and personal property, amounted to upwards of $69,000. On November 10, 1952, pursuant to subdivision 1 of section 24 of the Mental Hygiene Law (as amd. by L. 1952, ch. 598, eff. April 9, 1952), the Commissioner of Mental Hygiene fixed the amount of payments for the care, maintenance and treatment of Leonard Asker, at $300 per month. No payments have been made by the committee.

Subdivision 1 of section 24 of the Mental Hygiene Law, so far as here applicable reads: " 1. The institutions in the department shall be maintained for the care and treatment of poor and indigent persons as defined in section two of this chapter. The commissioner may permit persons who are neither poor nor indigent to be maintained and treated in such institutions or in family care, conditioned upon prompt and regular payments for such care, maintenance and treatment in amounts as fixed by the commissioner. In the discretion of the commissioner, the amounts so fixed may be at the reimbursement rates or in excess thereof."

A " poor person " is defined in subdivision 12 of section 2 of the Mental Hygiene Law as " a person who is unable to maintain himself and having no one legally liable and able to maintain him ". An " indigent person " is defined in subdivision 13 of the same section as " a person who has not sufficient property to support himself while mentally ill, epileptic or mentally defective, and to support the members of his family lawfully dependent on him for support ". Two things are evident and certain. The first is that the State hospitals are maintained (and largely at public expense), for the care and treatment of the poor and indigent. The second is that Leonard Asker is neither a " poor person " nor an " indigent person ". It seems clear that a person who is neither poor nor indigent, has no absolute right to be maintained and treated in one of the State hospitals. There are two conditions to be met in the case of such person. One is that there is room for him and the second is that prompt and regular payments be made. The amount of such payments, the Legislature has said, shall be fixed by the commissioner and, in his discretion, may be in excess of the so-called reimbursement rate.

A little over four months after his appointment, the committee made petition to and was granted the right by the court to have an intermediate judicial settlement of his accounts as committee of the property. The only apparent reason for a judicial settlement in so short a time was the request by the committee in his petition that his compensation as committee of the person be determined and that additional compensation be allowed him, as committee of the property. In any event an account was filed and a guardian ad litem was appointed. The account disclosed only one unpaid claim, that of the Department of Mental Hygiene at $300 per month, amounting to $2,030 to January 30, 1953. In the account filed, it was asked that there be a reduction " on the ground that the income of said incom-

petent does not warrant such a large monthly basis.'' The Attorney-General appeared and by answering affidavit, made the objection that the court was without jurisdiction to hear and determine the rates and requested a direction to the committee to pay the claim of the Department of Mental Hygiene computed at the rate fixed by the commissioner.

A hearing was had at which the said Ralph Asker, the committee, gave some testimony which is irrelevant to the problem presented. As we view it, the only question which is before this court for determination is whether the Special Term had any authority, upon a judicial settlement, to make a determination fixing the amounts to be paid from the estate of the incompetent for the care and treatment of the incompetent in a State hospital or whether, on the other hand, the Commissioner of Mental Hygiene has the sole power to establish the amounts of such payments. The Special Term held that a distinction must be read into the construction of the statute (§ 24) as between patients who are dangerous and those who are not; that if subdivision 1 of section 24 is construed to relate only to patients '' who may be received or rejected as a class not dangerous to themselves and others '', then the constitutionality of the statutory provision may be sustained; otherwise not. Accordingly, the portion of the order appealed from by the Department of Mental Hygiene, provides that the claim is allowed at the reimbursement rates only, and disallows the claim at the rate fixed by the commissioner. Evidently this decision was predicated on a finding that the incompetent was in a class of '' violent self-destructive '' patients although the court stated in its memorandum that there was testimony '' that while in the institution the patient is habitually quiescent, sitting quietly in his chair without even speaking most of the time.''

However that may be, there is nothing in the statutes and no judicial authority which has been called to our attention, which creates any distinction between violent and nonviolent patients insofar as the cost of their care and treatment is concerned. We do not think there may be any such distinction made in applying the statutes relating thereto. Section 4 of article XVII of the State Constitution provides in part: '' The care and treatment of persons suffering from mental disorder or defect and the protection of the mental health of the inhabitants of the state may be provided by state and local authorities and in such manner as the legislature may from time to time determine.'' This the Legislature has done by the provisions of the Mental Hygiene Law for the benefit of the poor and indigent and second-

arily for others who are neither poor nor indigent. As to the latter class, their care and treatment in State-supported hospitals has been provided for conditionally. The Legislature has given to the commissioner the sole authority to fix the payments to be made for the care of those who, upon compliance with the conditions, may become patients. We perceive no constitutional question. The Legislature might have provided that all patients be cared for without charge or it might have restricted its State-supported hospitals to the reception of the poor and indigent only. By the Constitution, the manner in which the care and treatment shall be provided is for the Legislature alone to determine. When it provides that the facilities of the State hospitals may be availed of by other than the poor and indigent, upon payment therefor in the manner, amount and at the times provided by statute, it does not tread upon the constitutional provision. The Legislature having made provision for fixing the amounts to be paid by those not poor or indigent, there is no authority in the courts to fix some other amount. We see no infringement upon the duty and prerogative of the courts as set forth in section 1357 of the Civil Practice Act. We hold that the amounts to be paid are discretionary with the commissioner and that the amounts so fixed by him, pursuant to legislative authority, may not be collaterally questioned in a proceeding for judicial settlement. Some other remedy might be available to the committee if the determination was arbitrary or capricious. We are not here concerned with that. Nor can we subscribe to the thought that the result is an unlawful taking of private property. If the committee of the person is dissatisfied with the charge made and believes it to be excessive, he has merely to remove his charge to some private institution as he has been requested to do by the commissioner.

No authority was cited by the Special Term nor by the respondent on this appeal to substantiate the contention of the committee. We find none. On the other hand, we call attention to *Matter of Bendheim* (187 Misc. 372); *Matter of MacCurdy (Tudman)* (268 App. Div. 954), and *Matter of Kruse* (205 Misc. 964) as indicative of the view of the courts in relation to the statutory powers of the Commissioner of Mental Hygiene. The courts may not override legislative mandates made within the framework and purport of the Constitution.

We conclude that the portion of the order appealed from should be modified by striking therefrom all of the decretal provisions encompassed in section " 3 " of said order, excepting the last paragraph thereof, and that the claim of the Department

of Mental Hygiene should be allowed at the monthly rate determined by the commissioner. The order as modified should be affirmed.

All concur. Present — VAUGHAN, J. P., KIMBALL, PIPER and WHEELER, JJ.

Order insofar as appealed from modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of this appeal to any party.