Lawrence E. Kahn, S.
This proceeding is brought by petitioner administrator to determine the validity and enforceability of the claim filed by the Commissioner of the Department of Mental Hygiene of the State of New York.
The basic facts are not in dispute. The decedent, Frank Gnerre was admitted to Hudson River State Hospital on August 2, 1966. On August 19, 1969 petitioner was appointed committee of the person and property of Frank Gnerre, an incompetent; Frank Gnerre died on October 1, 1970 while still a patient at the Hudson River State Hospital. Petitioner was granted letters of administration on May 1, 1974. On November 18, 1974 the Commissioner of the Department of Mental Hygiene presented petitioner with a written notice of claim alleging that said estate is indebted to the Department of Mental Hygiene in the sum of $12,571.80 for services rendered.
Several issues are raised in this proceeding. The first issue is whether section 43 or section 24 of the Mental Hygiene Law governs this situation. Secondly, is the applicable statute constitutional? Thirdly, was there a waiver of this claim by the State by acceptance of moneys at a lesser rate than is now being asserted? Lastly, does the applicable Statute of Limitations bar any or all of this claim?
This court holds that section 24 and not section 43.03 is applicable to the present case. The decedent, Frank Gnerre, died October 1, 1970. Section 43.03 of the Mental Hygiene Law did not come into effect until January 1, 1973. Section 24 (subd 9, par [b]) was the law in effect at the date of decedent’s death and the rights of the parties are to be determined according to that law. Section 91.03, which became effective at the same time as section 43.03, provides: "Nothing contained in this chapter or any act amendatory thereof shall affect or impair the validity of any act done or right accruing, accrued or acquired, or any order, judgment, or status established prior to the enactment of this chapter or prior to the enactment of any act amendatory thereof”
As to the constitutional issue, section 4 of article XVII of the State Constitution provides: "The care and treatment of *702 persons suffering from mental disorder or defect and the protection of the mental health of the inhabitants of the state may be provided by state and local authorities and in such manner as the legislature may from time to time determine.”
Based upon this constitutional authorization, the Legislature has bestowed upon the Commissioner of Mental Hygiene the power to fix reimbursement rates for the care, maintenance and treatment of patients of State institutions. The commission has exercised this power from time to time and continues to do so. Such delegation is not an impermissible one. Since the financial ability of patients differs greatly, as does the kind of care required, a broad grant of discretionary power vested in the commissioner is not only permissible, but vital. There is no violation of due process or equal protection, but merely a rational legislative fulfillment of a constitutional mandate. The validity and constitutionality of the statutory enactment of section 24 has been previously upheld in Matter of Asker (284 App Div 712, affd 309 NY 983) and in Matter of Branche (22 AD2d 329).
As to the claim of petitioner that such claim for moneys was waived or released by nonassertion during the lifetime of the deceased) there is no need to look further than section 24 (subd 9, par [b]) of the Mental Hygiene Law which provides as follows: "The commissioner, in his discretion, may fix the amounts to be charged for care and treatment of mentally disabled persons at the reimbursement rates or less than the reimbursement rates. The acceptance of payments at less than the reimbursement rates shall not be construed to release a patient, his estate, committee or guardian, or the trustee of a fund established for his support, or any ñduciary or payee of funds for and on behalf of a patient from liability for payment of the difference between the amount so ñxed, accepted or paid and the full reimbursement rates. "(Emphasis supplied.)
Acceptance at less than the full rate merely enables a patient to postpone the full cost of the care and maintenance. Such postponement does not result in a waiver, but is actually a help to the patient, in that lack of funds at the time of admission does not prevent the patient from receiving immediate care which may be desperately needed. (See, also, Matter of Michel, 45 Misc 2d 862 and Matter of Branche, supra.)
Nor is this claim barred by the Statute of Limitations, as claimed by petitioner. Subdivision 8 of section 24 provides: *703 "Notwithstanding any inconsistent provision of law prescribing a different period of limitation therefore or a different time for the accrual thereof, an action or proceeding for the payment of charges for care, maintenance or treatment under this section must be commenced within six years after the cause of action has accrued, and solely for the purpose of the availability of such period of limitation as a defense to any such action, the cause of action shall not be deemed to have accrued against the defendant in such action or proceeding until the patient for whose care, maintenance or treatment the action or proceeding is brought has died or been discharged from the institution.” (Emphasis supplied.)
A cause of action for these moneys arose October 1, 1970 which is the date when the deceased, Frank Gnerre, died. This claim was filed November 18, 1974. As such, it is within the six-year Statute of Limitations and is not barred.
This court is not unmindful of the effect its holding will have upon decedent’s relatives living in Italy. This court recognizes the great financial benefit that would accrue to such heirs and next of kin had this claim of the State been disallowed. However, the remaining assets of this estate must be distributed according to law and equity and not according to the needs of potential beneficiaries. Both law and equity recognize that State institutions and the taxpayers must be given their just due and be reimbursed for the cost of care given to the decedent from his estate before others are entitled to receive a legacy.