Aron Steuer, J.
The respondents are the Board of Education of the City of New York. The petitioner is the father of Michael Elgin, until recently a pupil in the school system and he is joined in the petition by the Parents Association for CRMD, Inc., who seek to extend the relief requested to include all others similarly situated to Michael Elgin.
Michael Elgin attended school classes especially set up for retarded children. In the school system these are known as CRMD. He continued to so attend until he became 17 years old and was in a grade corresponding to junior high school. He has an I.Q. of over 50. Upon the completion of the term above *865 described respondents refused to accept him in any class. The purpose of this application is for an order in the nature of mandamus to compel the Board of Education and the Board of Estimate to provide classes for petitioner’s son and others similarly situated until they reach the age of 21 years.
Classes for mentally retarded children have been conducted by the Board of Education for many years without any legislative mandate. In 1917 the Legislature directed the school authorities to provide such classes (L. 1917, eh. 553). The law has been several times amended and in 1957 the changes were introduced on which the petitioners rely. These are subdivisions 4 and 5-b of section 4404 of the Education Law and they read: “4. The board of education of each school district in which there are ten or more children retarded in mental development shall establish such special classes as may be necessary to provide instruction adapted to the mental attainments of such children from their fifth birthday until the end of the term during which they attain their twenty-first birthday under regulations to be established by the commissioner of education.” “ 5-b. The provisions of subdivisions four and five of this section shall apply only to children having intelligence quotients of not less than fifty.”
Prior to this enactment the statute (L. 1950, ch. 796; formerly Education Law, § 4406, subd. 2) in effect made similar provision except that there was no provision as to the ages of the children involved.
It was the practice of respondents to provide classes for all retarded children regardless of intelligence quotient up through junior high school age or 17 years. At that time a determination was made on the basis of examination of each child whether the child was capable of benefiting by further education. If the decision was negative no further schooling was provided. It is respondents’ contention that such a determination was made in the case of petitioner’s son. Petitioner does not contest this fact. His claim is that the quoted statute makes it mandatory on the board to provide classes until the pupil completes the term embracing his 21st birthday without regard to the board’s opinion of the worth or benefit of such classes to the individual.
The board justifies its action by reference to another section of the Education Law (4401), amended at the same session. This section reads: “ 2. A ‘ child with retarded mental development ’ means a minor who, because of retarded intellectual development as determined by an examination by an approved *866 psychologist or psychiatrist, is incapable of benefiting through ordinary classroom instruction, but who may be expected to profit from special educational facilities.”
Prior to the amendment the section (then 4406, subd. 1; L. 1950, ch. 796) read as above but had the added words “ designed to make him socially and economically competent.”
The board takes the position that it is, by virtue of this last statute, only required to maintain classes for those retarded children ‘ ‘ who may be expected to profit ’ ’ therefrom.
The question presented is solely of legislative mandate. Barring that, it is not for the court to direct how the board shah perform its functions. The provisions as to age and intelligence quotient do not supplant the discretion of the board to limit the providing of facilities to those who can benefit from them. Bather they operate in the opposite direction, they limit the class. Had the Legislature intended to remove this qualification they would undoubtedly have done so. As indicated the qualification was narrowed, as the only children for whom facilities had to be provided previously were those who could be expected to gain economic and social competence. That is no longer the test. But a test remains. The board is not required to stultify itself by setting up so-called classes where in fact the only result can be custodial care.
The application is denied.