In the Matter of MOLLIE LESSER, as Guardian ad Litem for MELVIN LESSER, an Infant, Respondent, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants.

Second Department, April 22, 1963.

Leo A. Larkin, Corporation Counsel (*Sidney P. Nadel, Seymour M. Quel* and *Joseph M. Callahan, Jr.*, of counsel), for appellants.

*Solomon Z. Ferziger* (*David D. Wach* of counsel), for respondent.

*Per Curiam.* The petitioner (the mother and guardian ad litem of Melvin Lesser, an infant) instituted this proceeding under article 78 of the Civil Practice Act, to compel the Board of Education of the City of New York, the Board of Higher Education of the City of New York, the president of Brooklyn College, and the principal of Lafayette High School, to review the scholastic records of her son Melvin, to make corrections in his scholastic records and to admit him to Brooklyn College. The petitioner's prayer for relief has been granted; and the Boards of Education and the school officials appeal.

Melvin was graduated from Lafayette High School in 1962. During his attendance there, he was a member of the " Scholarship Program " which consisted of a series of classes open to students of superior performance and in which a more enriched treatment of the subjects was offered, enabling the participating students to achieve the maximum of their capacity. His high school scholastic average was 84.3%. The petitioner complains that, despite her son's creditable accomplishments, he has been denied admission to Brooklyn College, a municipal college under the jurisdiction of the Board of Higher Education. (Education Law, art. 125, §§ 6201–6213.)

Brooklyn College has adopted standards governing the admission of students: (1) the completion of 16 units of high school subjects in prescribed courses; and (2) the attainment of an average which is set for each term in order to accommodate the number of applicants as determined by budgetary allotments

and college facilities. Like other institutions for higher education, Brooklyn College has received many more applications than may be accepted within the limits of its conveniences.[1] Petitioner's son qualified under the first requirement, but his average of 84.3% was below the average of 85% set by the authorities for admission.[2] Nor did he achieve the average required under an alternative method of admission used by the authorities — a method which was based on the mark achieved by the student on the college board aptitude test merged with the student's high school average.

The petitioner does not challenge the accuracy of the averages attributed to her son. She asserts instead that the admission officer should have given greater weight to the marks which her son had obtained in the subjects encompassed within the "Scholarship Program". Such an evaluation, she claims, would result in an average above the minimum 85%. Further, she attacks the fairness and validity of an admission policy which operates solely by means of a mechanically-applied average. The court below sustained her contentions; it directed the appellants to redetermine Melvin's marks so as to bring them up to the 85% average, and then to admit him to the college.

In our opinion, the court was without power to make such directions. Courts may not interfere with the administrative discretion exercised by agencies which are vested with the administration and control of educational institutions, unless the circumstances disclosed by the record leave no scope for the use of that discretion in the manner under scrutiny (*Matter of Wasmund* v. *La Guardia,* 287 N. Y. 417, 420-421; *People ex rel. Peixotto* v. *Board of Educ. of City of N. Y.,* 212 N. Y. 463, 466). Section 6202 of the Education Law provides in part that (subd. 1) "The control of the educational work of such institutions [including Brooklyn College] shall rest solely in the board of higher education" and that it shall (subd. 5) "prescribe conditions of student admission, attendance and discharge." If the Board of Higher Education performs its discretion fairly and not arbitrarily, the court may not substitute its judgment for that of the board (*Matter of Fallon,* 9 A D 2d 766; cf. *Matter of Elgin* v. *Silver,* 15 Misc 2d 864, affd. 9 A D 2d 645; *Matter of Carnes* v. *Finley,* 98 Misc. 390).

---

1. During the period in question the college, for the Spring term 1962, received 805 applications, of which 661 were accepted; and for the Fall term 1962, the college received 4,767 applications, of which 2,780 were accepted.

2. Some grasp of the keenness of the competition among the applicants may be obtained by noting that 170 students had averages above Melvin's average but below 85%. All such applicants were denied admission.

More particularly, a court should refrain from interjecting its views within those delicate areas of school administration which relate to the eligibility of applicants and the determination of marking standards, unless a clear abuse of statutory authority or a practice of discrimination or gross error has been shown. The courts have found this policy to be most salutary in considering issues growing out of licensing statutes and civil service examinations (cf. *Matter of Wirzberger v. Watson*, 305 N. Y. 507, 513; *Matter of Fernandes v. Silverman*, 10 A D 2d 633, affd. 9 N Y 2d 681; *Matter of Davis v. Wiener*, 260 App. Div. 127, affd. 285 N. Y. 537; *Matter of Hubbard v. McNamara*, 196 Misc. 302, affd. 277 App. Div. 1026; *Matter of Fragomeni v. Wilson*, 280 App. Div. 1023; *Matter of Hauser v. Wilson*, 2 A D 2d 427). Similarly, the Commissioner of Education has pursued the same policy in considering appeals by persons aggrieved by the unfavorable action of authorities charged with the duty of evaluating their performance or qualifications (*Matter of Appeal of Emmer*, 77 St. Dept. [Educ.] 164; *Matter of Appeal of Flynn*, 75 St. Dept. [Educ.] 117; *Matter of Appeal of Schiller*, 72 St. Dept. [Educ.] 148).

Petitioner's son was entitled to fair and equal treatment with other applicants in accordance with standards reasonably established (cf. Education Law, § 313, subd. [3], par. [d]; Civil Rights Law, § 40). The record before us denotes no arbitrary, unfair, or unreasonable conduct by the appellants in denying him admission.

Whether, in computing the high school average, the marks given in special courses such as the "Scholarship Program" should be accorded more weight than the marks given in standard courses, was clearly a matter resting exclusively in the discretion of the school and college authorities. Equally, the determination as to what factors should enter into the standards set for college admission was within the exclusive province of the college authorities. The judicial task ends when it is found that the applicant has received from the college authorities uniform treatment under reasonable regulations fairly administered. In effect, by the order of the court below petitioner's son has been granted a preference over other applicants who may be equally worthy.[3] This the court may not do.

In reaching this determination, we have considered the appellants' motion for a rehearing as one based on additional facts.

---

3. The record discloses that in Lafayette High School alone, another student besides Melvin in the "Scholarship Program" was not admitted to Brooklyn College because his scholastic average did not measure up to the admission standards.

Hence, its denial is appealable (*Petito* v. *Diesel*, 12 A D 2d 792; *Matter of Rand*, 273 App. Div. 859). In our opinion, the motion should have been granted.

The orders should be reversed on the law and the facts, without costs; the motion for the rehearing should be granted; and the petition should be dismissed, without costs. Findings of fact contained or implicit in the decision of the Special Term (see 35 Misc 2d 896) which may be inconsistent herewith are reversed, and new findings are made as indicated herein.

UGHETTA, Acting P. J., KLEINFELD, BRENNAN, RABIN and HOPKINS, JJ., concur.

Orders reversed on the law and the facts, without costs; motion for rehearing granted; and petition dismissed, without costs. Findings of fact contained or implicit in the decision of the Special Term (see 35 Misc 2d 896) which may be inconsistent herewith are reversed, and new findings are made as indicated herein.