**Robin Andrew REHART, Petitioner,**

v.

**Commander Lynn R. CLARK, U.S.N., Respondent.**

**No. 71–1173.**

United States Court of Appeals, Ninth Circuit.

Sept. 1, 1971.

listment of Petitioner, a Navy enlistee, who had, on April 25, 1966, signed a written enlistment (Ex. B) containing the language noted in the footnote.[1]

After initial processing, Petitioner executed a contract (Ex. C) extending the enlistment for two years, the relevant provisions of which are as follows:

"I, ROBIN ANDREW REHART, B81 80 78 SANF having enlisted in the Navy of the United States on 25 April 1966 for FOUR years, in consideration of the pay, allowances, and benefits which will accrue to me during the continuance of my service, voluntarily agree to extend my enlistment, as authorized by Section 5539 of Title 10, United States Code, and the regulations issued pursuant thereto. I voluntarily agree to extend my enlistment for a period of TWO years from the date of expiration thereof, subject to the provisions and obligations of my said contract of enlistment of

Robert E. Kopp, Washington, D. C. (argued), Morton Hollander, Judith S. Ziss, of Department of Justice, L. Patrick Gray, III, Asst. Atty. Gen., Washington, D. C., Harry D. Steward, U. S. Atty., San Diego, Cal., for respondent.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

This action involves the interpretation of a written contract extending the en-

---

*Honorable Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

1. "I understand that I am enlisting under the provisions of the High School/Junior College Graduate Training Program in the rate of SA-JCNF. The provisions of this program and the category in which I am enlisting have been fully explained to me. I understand the final determination as to the school or course of Training to which I am assigned will be determined subsequent to enlistment and will be dependent on the following: Rremaining (sic) qualified by my performance both military and professional. Satisfactory completion of recruit training. The overall needs of the Navy. Results of basic battery test scores. Results of special aptitude tests. Physical qualifications, including qualifications (sic) for submarine duty if enlisting in Nuclear or Polaris Fields. Where compatible, my personal desires. I certify that no promise as to the specific school or course of Training to which I will be assigned has been made to me and that I further understand that although I was found eligible for enlistment and general service and I meet the requirements for the SA-JCNF category of the HS/JCGTP, I may later be found ineligible to continue in this category because of my eligibility for security clearance. I also understand that should such a situation occur, I may be assigned to another category for the HS/JCGTP for which I am qualified.
ROBIN ANDREW REHART
APPLICANT'S SIGNATURE

WITNESSED: Larry L. Claton
LARRY L. CLATON, 2nd LT, AGC
ASSISTANT ADJUTANT

"DATE. APR 25 1966 I have been personally interviewed by the Commanding Officer or a Recruiting Officer and have had all provisions of the program under which I am enlisting explained to me, including the six year service obligation to be eligible for Nuclear Power School. No promise has been made regarding assignment to either submarine or surface duty.
ROBIN ANDREW REHART
APPLICANT'S SIGNATURE

WITNESSED: LARRY L. CLATON
LARRY L. CLATON, 2nd LT, AGC
ASSISTANT ADJUTANT"

which this, my voluntary agreement, shall form a part.

"REASON FOR EXTENSION. Training (Nuclear Field Program— BUPERSINST 1306.64 Series or Selective Electronics Training (SET) Program — BUPERSINST 1510.104 Series). I understand that this extension agreement becomes binding upon completion of IC, EM and MM Class 'A' Schools or upon enrollment in the ET-A2 course for ET personnel and thereafter may not be cancelled except as set forth in BUPERS Manual Article C–1407."

Petitioner completed four years of naval service and filed a petition for a writ of habeas corpus to compel his discharge. His contention is that he had completed only one Class A school, that is, the MM Class A school in Great Lakes, Illinois. He argued that the agreement is clear and unambiguous and required his completion of three Class A schools, IC (Interior Communications), EM (Electrician's Mate) and MM (Machinist's Mate) as a condition precedent to the two-year extension of his enlistment. The District Court agreed and, in invoking the parol evidence rule, sustained Petitioner's objection to the reception in evidence of BUPERS INSTRUCTION 1306.64E as an aid in the interpretation of the agreement. This is a long directive issued by the Active Chief of Naval Personnel dealing with information concerning Nuclear Field Personnel. While it is relevant in its entirety, two extracts thereform will serve to demonstrate this:

"3. *Background*

"a. Nuclear Field Personnel are recruited under the provisions of the High School/Junior College Graduate Program outlined in the Navy Recruiting Manual. Personnel enlisted in the Nuclear Field Program under the High School/Junior College Program will be designated Nuclear Field (NF) at the time of acceptance for enlistment. Nuclear Field Personnel will be further identified in accordance with paragraph 8. prior to transfer from a Class 'A' School.

"4. *Requirements.* Nuclear Field Personnel must meet the following requirements and criteria:

"a. Prior to graduation from Class 'A' School, must be determined to be physically qualified for the Nuclear Power Program in accordance with references (a) and (f), and must have properly documented health records required by reference (f). In addition, Nuclear Field Personnel volunteering for the submarine program must meet the special physical requirements for duty in submarines as set forth in reference (a). However, personnel volunteering for the submarine program who fail to meet submarine physical requirements can be continued in the Nuclear Field Program but shall not be assigned to submarine duty.

"b. Be a U. S. citizen and meet security clearance requirements. Requests for security clearance will be prepared and handled in accordance with reference (b). Strict compliance with the provisions of references (b) and (c) is mandatory for all commands administering these personnel. This action must be completed prior to graduation from Class 'A' School.

"c. Have minimum combined GCT plus ARI score of 115.

"d. Will not have reached 25th birthday at time class convening date for Nuclear Power School.

"e. Have a total active service not to exceed 4 years at time of class convening date for Nuclear Power School.

f. Be a high school graduate or have completed two years of high school and have a high school GED equivalent.

"g. Meet the school selection criteria for one of the following Class 'A' Schools: ET, IC, EM and MM. Nuclear Field Personnel selected for electronics training should also be counseled on the provisions of reference (g).

"h. Agree to extend enlistment, if necessary, in order to have a minimum

of six years active obligated service from the date of enlistment."

The Government argues first that the Bupers Instruction 1306.64E cannot be ignored because it has the force and effect of law which is automatically a part of the contract. It is well settled that existing laws are read into contracts in order to fix the rights and obligations of the parties. Home Building and Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). This is also true of valid regulations having the force and effect of laws of general application.

The extension of enlistment agreement was authorized by statute. 10 U.S.Code, 1964 Ed., p. 1515, § 5539(a):

"Under regulations prescribed by the Secretary of the Navy with the approval of the President, a member of the Regular Navy or the Regular Marine Corps may extend or re-extend his enlistment by written agreement for less than one year or for a period of one, two, three, or four full years. However, the total of all such extensions of an enlistment may not exceed four years."

Not only does Section 5539(a) authorize extension of enlistment agreements under regulations prescribed by the Secretary of the Navy with the approval of the President, but Section 6011 of Title 10, United States Code, also provides specifically: "United States Navy Regulations shall be issued by the Secretary of the Navy with the approval of the President." The regulations so issued have the force of law. Cafeteria & Restaurant Workers Union, Local 473, A. F.L.-C.I.O. v. McElroy, 367 U.S. 886, 81 S.Ct. 1473, 6 L.Ed.2d 1230 (1961).

The United States Navy Regulations 1948, in effect in 1966, were issued by the Secretary of the Navy and approved by President Truman on August 9, 1948. Section 1201, "Regulatory Publications for the Department of the Navy," provides, in pertinent part:

"1. The regulations, orders and instructions issued for the guidance of all persons in the Department of the Navy are found in the following sources:

" * * *

"(f) Manuals and similar publications, including those within the Navy and Marine Corps Directives Systems, *issued by the chiefs of bureaus and offices*, the Comptroller of the Navy, the Judge Advocate General, and the Commandant of the Marine Corps, and approved by the Secretary of the Navy.

"2. *The regulations, orders, and instructions contained in the said sources are binding on all persons in the Department of the Navy.*" (Emphasis added.)

The Bupers Instruction 1306.64E which was rejected as evidence and disregarded as irrelvant to the interpretation of the extension of enlistment agreement was issued by the Acting Chief of Naval Personnel on April 13, 1966. We conclude that it was part of the governing law in effect when the agreement was executed and could not be disregarded in the interpretation of the agreement. The offer of the regulation as evidence was merely for the convenience of the trial court. It was, in legal effect, "in evidence" without such offer.

We believe, further, that the District Court erred in rejecting Bupers Instruction 1306.64 as incompetent parol evidence. Even an ancient view of the parol evidence rule, which, in its classical expression, precludes the reception of parol evidence to vary, contradict or add to the terms of a written instrument, permits evidence of the circumstances of the parties and the associated surroundings so that meaning may be given to the words used. For instance, in Reed v. Insurance Co., 95 U.S. 23, at 30, 24 L.Ed. 348 (1877), the Court said:

"But a rigid adherence to the letter often leads to erroneous results, and misinterprets the meaning of the parties. That such was not the sense in which the parties in this case used the

words in question is manifest, we think, from all the circumstances of the case. Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the stand-point of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities. On this subject Professor Greenleaf says: 'The writing, it is true, may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, or substituted in its stead. The duty of the courts in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words they have used.' 1 Greenl.Evid., sect. 277. Mr. Taylor uses language of similar purport. He says: 'Whatever be the nature of the document under review, the object is to discover the intention of the writer as evidenced by the words he has used; and, in order to do this, the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter. With this view, extrinsic evidence must be admissible of all the circumstances surrounding the author of the instrument.' Taylor, Evid., sect. 1082. Again he says: 'It may, and indeed it often does, happen, that, in consequence of the surrounding circumstances being proved in evidence, the courts give to the instrument, thus relatively considered, an interpretation very different from what it would have received, had it been considered in the abstract. But this is only just and proper; since the effect of the evidence is not to vary the language employed, but merely to explain the sense in which the writer understood it.' Id., sect. 1085. See Thorington v. Smith, 8 Wall. 1 [19 L.Ed. 361], and remarks of Mr. Justice Strong in Maryland v. [Baltimore & O.] Railroad Company, 22 id. 105 [22 L.Ed. 713]."

See also Porto Rico Sugar Company v. Lorenzo, 222 U.S. 481, 32 S.Ct. 133, 56 L.Ed. 277 (1912).

▆▆▆ In the instant case, the extension of enlistment agreement expressly refers to "Training (Nuclear Field Program—Bupersinst 1306.64 Series * * *, obviously, it seems to us, as a reference for a more complete description of the scope and purposes of the training contemplated. A reference in a written agreement to an extraneous writing makes it part of the agreement, at least for the purposes indicated. Guerini Stone Co. v. P. J. Carlin, 240 U.S. 264, 36 S.Ct. 300, 60 L.Ed. 636 (1916).[2]

We conclude, for the reasons stated, that the trial court erred in rejecting BUPERS INSTRUCTION 1306.64 as a

2. This is a federal contract governed by federal law. In so limiting our discussion of the parol evidence rule as applied to federal contracts, we intend no implication with respect to the adoption or rejection by the federal courts of the more liberal interpretation of the rule espoused by Professor Corbin, 3 Corbin on Contracts, Chapter 26, § 573, et seq. Cf. Restatement of Contracts, §§ 230, 231; Masterson v. Sine, 68 Cal.2d 222, 65 Cal. Rptr. 545, 436 P.2d 561 (1968).

competent and material aid in interpretation of the language of the agreement.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.