Richard S. Lane, J.
The battle for greater public awareness of and responsibility for the fate of the mentally retarded has been joined for a 100 years or more. As in the case of so many other social problems, the battlefield has shifted in recent years from the halls of academe and the houses of Legislature to the courts. In New York it has usually been the Judges of the Family Court, the Federal courts, and the appropriate appellate tribunals who have been compelled to cope with the anguish of helpless human beings and their *1004 families within the parameters of relatively rigid legal precepts developed for other more mundane purposes. Herein once again in the unfamiliar setting of the Civil Court.
Plaintiff has sued for the unpaid balance of fees charged for the care, treatment and maintenance of defendant’s minor daughter, Maureen, at the Willowbrook State School (now the Willowbrook Developmental Center). Defendant denies the allegations of the complaint and interposes a number of constitutional and other affirmative defenses. The New York State Association for Retarded Children has been granted leave to intervene amicus curiae. Plaintiff now moves for summary judgment.
Plaintiffs prima facie case goes uncontroverted in the papers. It is conceded in effect that Maureen was admitted to Willowbrook as a mental defective on defendant’s application pursuant to section 123 of the Mental Hygiene Law (now §§ 33.25, 33.27); that she has received and continues to receive care, treatment and maintenance; that the Commissioner of Mental Hygiene has fixed fees pursuant to section 24 (now § 43.01); that said fees are within defendant’s means, and that the unpaid amount of said fees has been properly calculated.
Accordingly, summary jdugment should be granted unless there has been shown to be legal and factual merit in any of the defenses raised in the answer. Most of them can be disposed of easily.
It is asserted by defendant that he had an agreement as to fees which plaintiff has breached by increasing them. No such agreement, however, has been shown in the papers, and there is simply no authority for converting plaintiffs legislative mandate to provide services and its legislative authority to charge therefor into a contract.
It is next asserted by defendant that he has furnished and continues to furnish Maureen with clothing and toilet articles necessary for her care. No such contributions, however, have been shown in the papers nor has it been alleged that plaintiffs fees cover such items. In any event, plaintiff is not suing on the common-law doctrine of necessaries but pursuant to statutory authority.
It is further asserted by defendant that plaintiff has failed to and refused to process certain insurance claims for reimbursement for medical treatment provided to Maureen whereby defendant has been damaged in the sum of $30,000. However, the existence of any insurance policies under which *1005 reimbursement could have been claimed has not been shown in the papers. Even if such policies existed, it is dubious that plaintiff would have any obligation to pursue them on defendant’s behalf (see Szostak v State of New York, 28 AD2d 1042). And, in any event, jurisdiction to consider any such claim by defendant would rest solely in the Court of Claims (Psaty v Duryea, 306 NY 413).
It is further asserted by defendant that there are no clear standards in section 43.01 of the Mental Hygiene Law pursuant to which the commissioner fixes fees. However, the standards are and have always been cost and ability to pay (Matter of Kesselbrenner, 33 NY2d 161, 166). And, in any event, jurisdiction to attack the commissioner’s fees as arbitrary and capricious would rest solely in the Supreme Court in an article 78 proceeding; they may not be attacked collaterally, (Matter of Asker, 284 App Div 712, affd 309 NY 983; Matter of Glynn, 31 AD2d 530).
It is further asserted by defendant that plaintiff has failed to provide Maureen with proper care, treatment, training and education in breach of articles 7, 9, and 15 of the Mental Hygiene Law and article 89 of the Education Law. Amicus has pursued this approach vigorously with respect to Willowbrook and with some success (New York State Assn. for Retarded Children v Rockefeller, 357 F Supp 752, consent decree entered sub nom New York State Assn for Retarded Children v Carey, 393 F Supp 715). Here, however, there has been no factual showing in the papers as to what Maureen’s regimen at Willowbrook has been and wherein it has been deficient. Even if it could be argued that the affidavits relating to a recent physical and psychological examination of Maureen adequately demonstrate plaintiff’s default, jurisdiction to enforce legislative promises would again rest solely in the Supreme Court in an article 78 proceeding.
An alternative remedy might be an application at the foot of the consent decree referred to. hereinabove (see order by Judge John R. Bartels in the Eastern District reported in the press March 11, 1977).
The remaining defense asserted by defendant — denial of equal protection of the laws — has been the primary subject of excellent briefs submitted by the Attorney-General and amicus. The gravamen of defendant’s position is that there is discrimination because certain handicapped children — the blind and the deaf — receive maintenance at State expense *1006 pursuant to article 85 of the Education Law, whereas other handicapped children such as Maureen are charged therefor. In final analysis, however, this position also does not stand up.
In the first place there is serious question as to whether the apparent discrimination is real or whether it is the product of semantics.
Blind and deaf children receive maintenance only while resident at certain State institutions for educational purposes. Maureen was not and is not now institutionalized for educational purposes, but rather because she is retarded, dependent and in need of care in every aspect of daily living. Defendant’s affidavits seek to obliterate this distinction contending that, with respect to a person in Maureen’s condition, any purposeful intervention to enhance behavioral competence is education. In abstract, I do not quarrel with defendant’s doctors.
Unfortunately for defendant it is legislative meaning which controls here, not an updated definition, and the pattern of legislative enactment has always revealed a clear dividing line between education on one hand and care and treatment on the other. In the Education Law the Legislature has addressed education in the traditional sense of academic learning starting with the free common schools mandated by section 1 of article XI of the Constitution. In the Mental Hygiene Law the Legislature has addressed the problems of the mentally retarded also in the traditional sense of care and treatment.
This legislative dichotomy is demonstrated beyond peradventure by the cross references between the two laws. Section 15.11 of the Mental Hygiene Law requires the department to provide for children in its institutions the kind of education they would otherwise be entitled to receive in their local schools. Article 89 of the Education Law requires the department to stimulate and co-ordinate private and public efforts to care for and educate handicapped children, and to provide special services and programs for the education of handicapped children. This legislative dichotomy is also minored in the cases (Matter of Leitner, 40 AD2d 38, 43; Matter of Elgin v Silver, 15 Misc 2d 864, affd 9 AD2d 645; Matter of Logel, 78 Misc 2d 394, 396).
Efforts to develop the capacities of a mentally retarded child to the fullest extent possible may be education in the philosophical sense but is is not education in the legislative sense. It is part of today’s expanded concept of care because it has come to be recognized that to do otherwise is to invite atrophy *1007 or even regression (New York State Assn. for Retarded Children v Carey, supra, p 718).
Even if the above rationale may be too Augustinian, the argument that handicapped children other than the blind and the deaf have been denied equal protection of the laws has been squarely faced by the Court of Appeals and determined adversely to defendant’s position (Matter of Levy, 38 NY2d 653, app dsmd 429 US 805).
Defendant seeks to distinguish the Levy case on the grounds that therein the comparison was between State institutions on one hand and private institutions on the other, whereas here the comparison is between different State institutions. It is a distinction without relevance because the discrimination argued is with respect to benefits provided for respective groups of children not to the institutions wherein they may be placed.
Defendant further seeks to distinguish the Levy case on the ground that handicapped children at the State developmental centers with whom we are concerned here are a more discrete class. No evidence is adduced to establish that they are a suspect class, and to further subdivide handicapped children weakens rather than strengthens the basic thrust of defendant’s position.
Defendant further argues that the Levy result has been overruled by the Rehabilitation Act of 1973 (US Code, tit 29, § 701 et seq.), and proposed regulations thereunder 45 CFR 84.31 and 45 CFR 84.34. Even if Federal financial assistance to the Department of Mental Hygiene, as set forth in the second supplemental brief submitted by amicus, could be accepted as factually asserted by one with personal knowledge, there is simply no showing that Maureen is being denied the benefits of any program or activity sponsored by the department. And with respect to the proposed regulations, even if adopted and even if it is assumed they would survive a challenge as beyond the scope of the statute, there is simply no showing that any educational program being operated by the department is supported in whole or in part by Federal funds.
Finally, defendant argues that the Levy case is not dispositive because Maureen is deaf as well as mentally retarded. The difficulty with this argument is that the State does not provide maintenance to all deaf children but only to deaf children admitted to institutions specified in article 85 of the Education Law. Let Maureen apply for admission to one of *1008 such institutions, and, if she is turned down because of lack of capacity, let her test the constitutionality of such rejection in an article 78 proceeding. Likewise let her test in an article 78 proceeding any failure of the Department of Mental Hygiene to carry out its duties with regard to hearing handicaps as set forth in section 15.11 of the law.
For the reasons set forth hereinabove and without prejudice to the commencement by defendant of any action in the Court of Claims or any article 78 proceeding in the Supreme Court, plaintiff’s motion for summary judgment is granted.