**Donell J. GREEN**

v.

**John F. LEHMAN, Jr., Secretary of the Navy, and William P. Lawrence, Vice Admiral, U. S. Navy, Superintendent, United States Naval Academy.**

**Civ. A. No. N–81–1888.**

United States District Court,
D. Maryland.

March 23, 1982.

**261**

Weldon L. Maddox, Baltimore, Md., for plaintiff.

J. Frederick Motz, U. S. Atty. for the D. of Maryland, Andre M. Davis, Asst. U. S. Atty., Baltimore, Md., and Donal M. Hill, Lieutenant Commander, JAGC, USN, Alexandria, Va., for defendants.

NORTHROP, Senior District Judge.

Before the Court for disposition are defendants' motion to dismiss or to stay proceedings, or, in the alternative, for summary judgment filed on February 5, 1982, and the plaintiff's response thereto and his cross-motion for summary judgment filed on March 2, 1982.

## A. Request for Equitable Relief

Separate and apart from the myriad of constitutional due process, equal protection and other challenges raised by plaintiff, the Court must examine whether it has jurisdiction to entertain the action for equitable relief. Specifically posed to the Court is the question of whether a justiciable controversy exists.

As defined by the U. S. Supreme Court,

[A] justiciable controversy is ... distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests....

It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937) (emphasis supplied). Practically speaking, the issue is whether the "controversy" before this Court is susceptible to "specific relief through a decree of a conclusive nature." For the reasons stated herein, the Court concludes that the controversy submitted to it is non-justiciable.

There is no dispute between the parties that on May 18, 1981, the Academic Board of the Naval Academy determined not to retain plaintiff at the Academy because of

"academic deficiency."[1] On that day, plaintiff appeared before the Academic Board for the purpose of considering his grades in the last two semesters at the Academy, covering the academic year 1980–81. In the first semester of that academic year, plaintiff attained a semester Q.P.R. of 1.80 and, in the second semester, he attained a semester Q.P.R. of 1.19.[2]

In his cross-motion for summary judgment, plaintiff raises an insubstantial procedural defect in the May 18, 1981 proceedings of the Board. Simply, he states that he is unable to ascertain from the transcript of the Board's proceedings, what evidence it considered in making the determination to discharge him because of "academic deficiency."[3] To the contrary, it is clear that the deliberations of the Academic Board centered on an assessment of plaintiff's performance vis-a-vis objective criteria of academic performance, which criteria were known to plaintiff throughout his stay at the Academy, and which are not, and cannot be, challenged here.

Under date of July 15, 1981, the Superintendent of the Naval Academy forwarded to the Secretary of the Navy, a list of midshipmen found to be deficient in academic studies and recommended their non-retention pursuant to 10 U.S.C. § 6963.[4] Plaintiff's name appeared on that list of midshipmen to be discharged for "academic deficiency." In that communication, the Superintendent also referenced the previous recommendation forwarded under dates of May 13 and May 28, 1981, to discharge plaintiff for "insufficient aptitude", pursuant to 10 U.S.C. § 6962(a)(2).

The authority of the Academic Board to dismiss midshipmen for academic deficiency pursuant to Section 6963 is not at issue. Further, the regulations setting forth academic requirements have not been called into question by plaintiff, nor can they be.[5] Deficient academic performance, which warrants discharge, is defined as, among other failings, the failure to achieve a semester Q.P.R. of at least 1.5 for any given semester. Plaintiff's second semester Q.P.R. was 1.19, far below that required to avoid discharge for academic deficiency under Section 6963. Further, plaintiff's performance in the first semester of the last academic year fell below the required 2.00 minimum and warranted automatic probation.

Plaintiff does not take exception to these matters but merely points out that his overall average for the four year period was 2.33, above the 2.00 minimum required to graduate. His challenge to the discharge is based solely on the finding by the Academic Board that he possesses "insufficient aptitude."

Conceivably, under the academic regulations, a midshipman can have a cumulative average marginally above the minimum requirement and yet be subject to discharge because of academic deficiency in his last two semesters, or because of academic deficiency in his last semester. However, this Court is not empowered to intrude into the academic or other standard-setting actions of the military, or to judge the wisdom of such policies. See Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir. 1967). At the same time, however, it is eminently reasonable for the Academy, or any other educational institution, to require consistent and above-marginal performance by its students. Moreover, there is nothing unfair about a system which demands that the level of performance expected of prospective officers, in academics and in conduct be equal to the level of expected responsibilities of the leadership roles, soon to be assumed by them. In any event, these matters are, as the Court has already stated,

1. Exhibit 8, Defendants' Motion for Summary Judgment; Exhibit C, Plaintiff's Opposition.

2. Exhibit 6, Defendants' Motion for Summary Judgment.

3. Exhibit 24, Defendants' Motion for Summary Judgment.

4. Exhibit 8, *supra.*

5. Exhibit 7, Defendants' Motion for Summary Judgment.

reserved to the best judgment of the Academy.

It should be evident from the foregoing that the declaratory, injunctive and mandamus relief requested by plaintiff is not attainable by him, in light of the discharge recommendation for academic deficiency, which has already been submitted to the Secretary of the Navy.[6] Consequently, any examination by this Court into the merits of the constitutional and other challenges plaintiff raises in relation to the Administrative Conduct Hearing and the procedures of the Academic and Performance Boards would amount to no more than the rendering of an advisory opinion by the Court. Although the review of military discharge procedures in relation to constitutional due process requirements is an appropriate function of the judiciary, that review has traditionally been narrow in scope. *See Andrews v. Knowlton*, 509 F.2d 898 (2d Cir. 1975). Concededly, were this Court faced with a candidate whose academic performance met the Academy's requirements, it would unhesitatingly proceed to examine the process which led to his discharge. The reality is, however, that such a review, under these circumstances, would be wholly futile and an act outside of the Court's jurisdiction. Prudential requirements bar this Court from proceeding further on the merits of the claims for which plaintiff seeks equitable relief.

### B. *Application of 10 U.S.C. § 6959*

The only remaining and justiciable issue is whether the Academy was authorized to call plaintiff to active duty pursuant to 10 U.S.C. § 6959.

Plaintiff argues, first, that he had never executed an agreement in which he assented to be called to active duty in an enlisted status if he failed to graduate or to accept a commission. Second, relying on Judge Weiner's decision in *Dougherty v. Lehman*, No. 81–0145 (E.D.Pa., filed July 8, 1981), plaintiff argues, in the alternative, that

only wilful actions by him could result in a call to active duty. Contrary to plaintiff's reading, it is evident that the *Dougherty* court recognized that placement on academic probation was tantamount to a willful violation of the promise to complete satisfactorily the academic course program. Consequently, the only comfort plaintiff can take in that opinion is the Court's fiat that the Secretary of the Navy could not order the plaintiff therein to active duty because of the failure to produce the agreement signed by the midshipman in which he agreed to be called to active duty upon disenrollment from the academy.

This Court declines to emulate that result for the reason that it is a fundamental principle of contract law, which should be well known to the parties, that implied into every contract, as a term thereof, is the law as it exists at the time and place of contracting. Further, this principle extends to valid regulations having the force and effect of general application. *Rehart v. Clark*, 448 F.2d 170, 173 (9th Cir. 1971) (incorporating then-existing 10 U.S.C. § 5539(a) and regulations promulgated thereunder into the enlistment agreement); *Maryland-National Capital Park and Planning Commission v. Lynn*, 514 F.2d 829, 833 (D.C.Cir.1975) (holding that the trial court properly considered the Housing Act of 1961 in determining whether the Secretary of HUD had breached a grant-contract, in order to determine the extent of the Secretary's authority).

Consequently, the provision of Section 6959(b) is as much a term of the contract plaintiff had executed, as if it had appeared in bold print. The trial court need not have before it in evidence a contract signed by plaintiff with the specific language of Section 6959(b) contained therein. In legal effect, that specific provision is "in evidence" without such a proffer. *Rehart v. Clark*, 448 F.2d at 173.

---

**6.** At the oral hearing held on March 19, 1982, defendants stated that this discharge recommendation has not officially been acted upon.

The legislative history of Section 6959 indicates that Congress clearly intended that the academies have the power to call to active duty those midshipmen and cadets who failed to fulfill the conditions contained in Section 6959(a). Congress spoke clearly on this matter, and the Court is not disposed to read into Section 6959(b) a test of whether or not a midshipman or cadet has acted with the requisite intent in order to be called to active duty.

Both as to his conduct and as to his academic performance, plaintiff was placed on notice of serious deficiencies and possible impediments to graduation from the Academy. Failure to graduate necessarily means that a midshipman has not completed the course of instruction at the Academy, which he had agreed to do pursuant to the provisions of 10 U.S.C. § 6959. This is so irrespective of whether he expressly or impliedly agreed to fulfill the conditions of that section, or whether he expressly or impliedly assented to a provision specifically containing the language of Section 6959(b).

■ Accordingly, the Court concludes that the Secretary of the Navy had full authority to call plaintiff to active duty pursuant to 10 U.S.C. § 6959(b), as a result of plaintiff's failure to complete successfully his course of studies and to graduate from the Academy.

## C. *Request for Compensatory and Punitive Damages*

Defendants have moved to dismiss those portions of the amended complaint seeking compensatory and punitive damages. Setting aside for the moment the fact that the Court has already concluded that it must dismiss the claims for equitable relief because of the lack of a justiciable issue, there is no question that 28 U.S.C. § 1331 vests the Court with the authority to grant injunctive and declaratory relief. Moreover, 28 U.S.C. § 1361, the mandamus statute, affords a basis for this Court to compel performance by the defendants, assuming of course, that the Court were presented with a real controversy.

In the first part of this opinion, the Court conducted a limited review of the allegations of the amended complaint in order to ascertain whether a justiciable controversy was presented to it. The averments of the amended complaint and the monetary relief prayed for in connection therewith, raise a second issue of jurisdictional dimension. Insofar as the amended complaint seeks monetary relief against the sovereign in an amount exceeding $10,000 (if in fact it does), this Court is divested of jurisdiction pursuant to 28 U.S.C. § 1346(a)(2).

Were this Court presented with a complaint raising a justiciable controversy and were it to pass on the complaint as a whole, instead of piece-meal, it would conclude that plaintiff is challenging the constitutionality of those procedures by which he had been discharged rather than the *fact* of discharge. In that event, unlike the cases reviewed by the Court which held jurisdiction in similar instances to be vested in the Court of Claims, the essence of plaintiff's complaint would be one seeking declaratory and other equitable relief, and not one seeking a money judgment against the United States. *Compare Cook v. Arentzen*, 582 F.2d 870 (4th Cir. 1978) (discharged naval reserve officer sued Navy officials and U. S. seeking reinstatement, backpay, damages and declaratory relief); *Carter v. Seamans*, 411 F.2d 767 (4th Cir. 1969) (discharged member of Air Force sued Air Force officials seeking back pay, correction of military records and declaratory relief) with *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (retired army officer suit to correct military records held to be essentially equitable in nature and outside of the jurisdiction of the Court of Claims).

The Court is mindful that it must not, under the guise of determining whether it is vested with subject matter jurisdiction, determine the merits of the case before it. In this instance, however, the examination of the question of subject matter jurisdiction necessarily has been twofold because of the Court's duty to treat the issue of whether, in the first instance, a justiciable controversy is presented for adjudication.

Having said all of this, and because of the broad and vague allegations of the amended complaint in relation to the discrimination charges, the Court concludes that it has jurisdiction to grant plaintiff leave to amend. However, plaintiff is admonished that the jurisdiction of this Court is restricted by 28 U.S.C. § 1346. Further, plaintiff is precluded, by this present determination, from again seeking equitable relief in the form raised in the amended complaint.

In summary, plaintiff's amended complaint is being dismissed, with prejudice, as to those portions addressed hereinabove and determined to be non-justiciable. Plaintiff is given fourteen days' leave to amend that portion of his complaint which seeks compensatory damages, subject to the *caveat* that sovereign immunity may bar such claims and that, in any event, the jurisdiction of this Court is limited by virtue of 28 U.S.C. § 1346. Accordingly, defendants' motion for summary judgment is granted in part, and denied in part. Plaintiff's motion for summary judgment is denied in whole.

A separate order will be entered to confirm the Court's oral rulings at the conclusion of the March 19, 1982 hearing, as hereinabove set forth.