Thomas Nolan LIGHTSEY, III, Plaintiff,

v.

Admiral Thomas A. KING, Superintendent, United States Merchant Marine Academy, et al., Defendants.

No. CV–83–1346.

United States District Court,
E.D. New York.

April 29, 1983.

John J. Nigro, Jericho, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty. by Thomas B. Roberts, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

ALTIMARI, District Judge:

Plaintiff, a Midshipman at the United States Merchant Marine Academy in Kings Point, New York (hereinafter "the Academy") brought this action for declaratory and injunctive relief after the Academy refused to change an examination grade fixed at "zero" because of plaintiff's alleged cheating, despite a finding by the Academy's Honor Board exonerating him of that charge. As a result, the plaintiff was ineligible to take the Third Mates Licensing Examination offered by the Coast Guard on April 12–14, 1983. Jurisdiction exists under 28 U.S.C. §§ 1331, 2201 and 2202 and 5 U.S.C. § 702. *Krawez v. Stans*, 306 F.Supp. 1230 (E.D.N.Y.1969).

Following an evidentiary hearing on April 11th, the plaintiff was directed to take all make-up examinations available to him on the assumption his grade would remain a "zero." The Academy was, in turn, directed to certify plaintiff for the impending Licensing Examination, pending final decision on the matter. A conference was held after the Licensing Examination on April 20th. However, in light of the Court's directions to the parties at the initial hearing, plaintiff's performance on the Licensing Examination should be and is irrelevant to this determination on the merits.

While plaintiff's attendance at the April 12 Third Mates Examination has mooted

the request for an injunction permitting him to sit for that exam, the declaratory judgment action remains. *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). By telephone, the parties consented to having that action determined on the basis of the evidence already before the Court. That evidence focused on events surrounding an examination Midshipman Lightsey took on February 10, 1983, one of a series of tests administered as part of the Academy's "Deck Safety" course.

The examination was proctored by Lieutenant J. Dennis Gay, the professor in "Deck Safety." At the beginning of the examination, Lt. Gay testified that he gave instructions the exam would be conducted in a manner similar to Coast Guard examinations. There is some question as to when and in what manner Lt. Gay ended the examination. It is clear, however, that the examination was over in Lt. Gay's mind when he saw three students in the back of the room continuing to work, contrary to his pre-test instructions. Quoting from Lt. Gay's report of the events that followed, as submitted by him to the Academy's Honor Board (Plaintiff's Exhibit 1 at the 4/11 hearing):

> "At 1425 I proceeded to the back of the room to induce several students to stop writing and to hand in their answer sheets. Upon my return to the front of the room, I noticed that Lt. Huber was erasing the blackboard in the front right side of the room, thus leaving his back to the desk aforementioned. As I neared the desk I noticed M/n Lightsey filling in blanks on his answer sheet, specifically near the bottom of the sheet. I also noticed that to his right was his exam (pages one thru four) open to page one and laying face up. To his left were a number of completed answer sheets belonging to students who had completed them and submitted them on time. I asked M/n Lightsey, 'What do you think you are doing?' and simultaneously removed from him his answer sheet and exam. These are now in my possession and I will submit them to the Honor Board at the time of a hearing. M/n Lightsey replied to my question, 'I'm transferring answers from my exam to my answer sheet.' There was no further conversation at that time. Moments later, M/n Lightsey approached me and said that he had overheard other students as they talked about what I was thinking. He assured me that he was not cheating nor had it crossed his mind. I replied, 'It did cross mine.' I respectfully submit that M/n Lightsey was transferring answers from the answer sheet of another student and not at all from his exam pages."

Defendants, by their testimony and in their pleadings and briefs, have particularized Lightsey's alleged wrongs in various ways since the date of the test, including his continuing to write after the test was over and writing while standing where the test papers were being turned in, as well as copying answers off another cadet's completed answer sheet. Regardless of the labels the Academy now seeks to affix to Lightsey's conduct, it is obvious from the record that the issue here is his alleged cheating. Lightsey claims to have done no more than the three students in the back of the room who were "induced" to stop writing by Lt. Gay and alleges he was merely completing his own test paper when Lt. Gay confronted him.

The test papers of the three students in the back of the room were fully counted. Plaintiff's test paper was completely voided (assigned a grade of "zero") by Lt. Gay, although his computed score was "75". The Academy has refused to reinstate Lightsey's computed score, despite a determination by the Academy's Honor Board that Lightsey was *not guilty* of cheating. As a result of Lightsey's "zero" grade on the February 10th exam, he failed the Deck Safety course and, in combination with his other course grades, was thereby rendered ineligible for the Third Mates Licensing Examination offered by the Coast Guard.

This Court is not concerned with the numerical value of plaintiff's computed score

on the February 10th exam or with what effect that score, if counted by the Academy, would have on his rights to take or not take other exams in the future. Rather, the issue is whether the Academy is entitled to continue to void that computed score, whatever its value, after the Honor Board's determination.

This Court makes no determination as to whether Lightsey was cheating or not. That determination has already been made by the appropriate authority, as set forth in the Academy's own Disciplinary System Regulations. (Plaintiff's Exhibit 4 at the 4/11 hearing). Chapter Four of those Regulations deals with the Honor Concept and the Honor Board. The Board is comprised of fifteen cadets, with twelve of them having votes. The Honor Board's jurisdiction extends to charges of lying, cheating and stealing. Following such a charge, the Honor Board notifies the accused. An investigating officer is responsible for collecting the evidence, calling witnesses and presenting the case against the accused to the Honor Board. The Honor Board has the discretion of calling the reporting official to testify (see Exhibit 1), although this was not done in Lightsey's case. The accused is entitled to be present and to offer evidence in his own behalf. The Board then makes a finding of "guilty" or "not guilty." If a finding of "not guilty" is reached, the matter is dismissed and all records of the proceeding are destroyed. If a finding of "guilty" is reached, the Board recommends a sanction of either probation, suspension or disenrollment. If one of the latter two recommendations is made pursuant to a "guilty" verdict, a report of the case is submitted to the Academy Superintendent. The Superintendent then, in his discretion, may convene the Executive Board (see, Chapter Five of Regulations), comprised of faculty members and administrators, to review the case. That committee then imposes a sanction, not more severe than that recommended by the Honor Board. Otherwise, the Executive Board hears those cases involving infractions by Cadets that might lead to disenrollment, *other than* lying, cheating or stealing.

In this case, Lt. Gay filed a written charge with the Honor Board accusing Lightsey of cheating. (Exhibit 1). The Honor Board did not, as the Academy contends in its Declaration (par. 18), find "insufficient evidence to establish a violation." The Board found Lightsey "not guilty." The case was then dismissed and pertinent records were destroyed, in accordance with normal policy. Since Lightsey was found "not guilty," the matter was not referred to the Superintendent or the Executive Board. Nevertheless, when Lightsey confronted Lt. Gay with the finding of the Honor Board, Lt. Gay still refused to credit Lightsey for his computed test score. At different times, both Lt. Gay and Lightsey related the problem to the department head and Captain Paul Krinsky, Dean of Academics. The Academy now suggests this was Lightsey's only appropriate means of challenging his "grade" of "zero" under the Academy's regulations. (Declaration, paragraphs 11–13). However, Lt. Gay's own actions, in reporting the incident to the Honor Board, belie that notion. Lightsey's efforts to have the Honor Board's ruling of "not guilty" acknowledged by the school administration do not in any way undermine the propriety or effect of that ruling.

Captain Krinsky supported Lt. Gay's refusal to credit Lightsey's test, despite admitting at the hearing that the Honor Board's decision was "authoritative" within the Academy as to the charge of cheating. The Academy has attempted to defend this inconsistency by arguing this is a matter of "grades," and, as such, is delegated to the faculty and is reviewable only by the administration of the Academy.

This Court has great respect for the academic standards of the Merchant Marine Academy and the limits of a federal court. As regards any educational institution, the Court is in full agreement with those cases refusing to upset decisions of school administrations relating to such delicate areas as the eligibility of applicants and the determination of marking standards, absent a showing of arbitrary, capricious or bad faith conduct. *See, e.g., Hines v. Rinker,*

667 F.2d 699 (8th Cir.1981); *Gaspar v. Bruton,* 513 F.2d 843 (10th Cir.1975); *Stevens v. Hunt,* 646 F.2d 1168 (6th Cir.1981); *Lesser v. Board of Education of the City of New York,* 18 A.D.2d 388, 239 N.Y.S.2d 776 (1963). The case of *Green v. Lehman,* 544 F.Supp. 260 (D.Md.1982) is representative. There, a midshipman brought an action challenging his discharge from the Naval Academy, for academic deficiencies resulting from his failure to maintain a minimum grade point average in two successive semesters. The Court refused to consider the reasonableness of the minimum average requirement. *Id.* at 262. Similarly, this Court would not presume to tell the Merchant Marine Academy what should or should not be the correct passing score for one of its exams.

However, despite the artful semantics of the defendants, this is not an instance of discretionary grading, and the cases relating to academic standards and sanctions for academic deficiencies are not apposite. This is a disciplinary matter, rather than an academic one, a distinction of great significance. The Constitution imposes more stringent procedural requirements in cases of disciplinary sanctions. *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1978); *Sofair v. State University of New York,* 44 N.Y.2d 475, 406 N.Y. S.2d 276, 377 N.E.2d 730 (1978). The Academy is well aware of this distinction, because it takes great pains to argue that "no disciplinary element" was involved in Lightsey's case and that the Academy's refusal to credit his test score was "purely academic." (Defendants' Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Relief, p. 7, paragraph 2). However, the Court is convinced from the record and its observation of the witnesses at the evidentiary hearing that the reverse is true: there was no academic element to the Academy's action; rather, it was purely disciplinary, at least until the Honor Board cleared Lightsey of the charge of cheating. Only then did the Academy determine this to be exclusively an "academic" matter involving "grades," in an attempt to circum-

vent the Honor Board's verdict. Had the Academy taken this position from the outset, without reporting Lightsey to the Honor Board, and applied its "academic" procedures fairly, rationally and in good faith, this Court would not presume to question its judgment.

■ The service academies of the United States, including the Merchant Marine Academy, are not immune from the strictures of due process. *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir.1967); *Hagopian v. Knowlton,* 470 F.2d 201 (2d Cir.1972). Under the Fifth Amendment, individuals are protected against the deprivation of their liberty and property without due process of law. To be entitled to the procedural protections afforded by the due process clause, plaintiff in this case must show that the government's action deprived him of a "liberty" or a "property" interest. *Horowitz, supra,* 435 U.S. at 82, 98 S.Ct. at 951. Whether or not Midshipman Lightsey has a "property" interest at stake here, he is certainly entitled to assert a "liberty" interest. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the clause must be satisfied. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). Lightsey's good name, honor, reputation and integrity were impaired by Lt. Gay's formally accusing him of cheating before members of the Academy's staff and fellow midshipmen, including those seated on the Academy's Honor Board, and they continue to be impaired as a result of the Academy's conduct following the Board's determination. *Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684 (1976); *Horowitz, supra* 435 U.S. at 83–84, 98 S.Ct. at 951–952.

■ The Academy claims Lightsey has suffered no serious harm because he will be allowed to repeat the February 10th exami-

nation. That option is irrelevant to Lightsey's interest in clearing his reputation, the nature of which is protected by due process requirements. *Board of Regents v. Roth, supra,* 408 U.S. at 570–71, 92 S.Ct. at 2705–2706; *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Lightsey's being forced to repeat the exam in order to graduate would only serve to vindicate the Academy's position that he cheated on the first exam, a conclusion no longer tenable after the Honor Board hearing.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer, id.* In *Wasson v. Trowbridge, supra,* 382 F.2d at 812, the Second Circuit held "that due process only requires, for the dismissal of a Cadet from the Merchant Marine Academy that he be given a fair hearing at which he is apprised of the charges against him and permitted a defense." Under the Academy's Disciplinary Regulations, Midshipman Lightsey could have been dismissed from the Academy had the Honor Board found him guilty of cheating. That hearing, convened at the request of Lt. Gay, met the requirements of due process set forth in *Wasson v. Trowbridge, id. See, also, Hagopian v. Knowlton, supra* 470 F.2d at 211–12. Lightsey was informed of the charges against him both prior to and at the hearing and was permitted to present evidence, including witnesses, in his own behalf. The distinctive element of this case is that while the Honor Board, the exclusive original authority within the Academy empowered to address Lightsey's alleged offense, completely exonerated him in a hearing that satisfied the requirements of due process, the Academy thereafter changed the label it attached to Lightsey's wrongdoing and ignored the Honor Board's finding.

Those decisions remanding cases to the appropriate institution for purposes of holding a hearing that comports with due process would be of little value, if on remand the institution could simply ignore the results of the hearing. *See, e.g., Hagopian v. Knowlton, supra; Dixon v. Alabama State Board of Education,* 294 F.2d 150 (5th Cir.

1961), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

The procedural requirements of due process presuppose that the results of those required procedures will be respected. This is true whether the due process hearing is held in the first instance, as it was here, or on remand at the direction of the court. There is no difference between failing to provide a due process hearing and providing one but ignoring the outcome. By holding the Honor Board hearing and then disregarding its result, the Academy has violated Lightsey's right to due process.

Even were constitutional issues not involved, agency action such as that now before us is nevertheless violative of the terms of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq. Krawez v. Stans,* 306 F.Supp. 1230, 1233 (E.D.N.Y.1969); *Kletschka v. Driver,* 411 F.2d 436 (2d Cir.1969). Although courts have declined to review the merits of decisions made within the area of discretion delegated to administrative agencies, they have also insisted that where the agencies have laid down their own procedures and regulations, those procedures and regulations must be followed even where discretionary decisions are involved. *Smith v. Resor,* 406 F.2d 141, 145 (2d Cir.1969).

For example, in *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), the Supreme Court declared habeas corpus would lie if the Board of Immigration Appeals did not exercise its independent judgment, free of the influence of the Attorney General. Though the Immigration Act gave the Attorney General complete discretion over the subject matter of the action, he had delegated his authority by valid regulations to the Board. The Court required the procedures specified by the regulations to be carried out, even though had the Attorney General not delegated his authority, he could have acted himself and his decision would not have been reviewable. *See, also, Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1

L.Ed.2d 1403 (1957). This clear precept, that an agency must follow the regulations it promulgates, has been applied to the military as well. *Smith v. Resor, supra; Hammond v. Lenfest*, 398 F.2d 705, 718 (2d Cir.1968); *United States ex rel. Mankiewicz v. Ray*, 399 F.2d 900 (2d Cir.1968); *White v. Callaway*, 501 F.2d 672, 674 (5th Cir.1974), *reh'g* denied (en banc), 503 F.2d 1403 (5th Cir.1974).

The Merchant Marine Academy chose to adopt regulations creating an Honor Board, and it chose to vest that Board with authority over charges of lying, cheating or stealing made against Cadets. Lt. Gay chose to convene the Board by filing a charge of cheating against the plaintiff. Had Lt. Gay originally considered this to be a matter of discretionary grading, it is obvious there would have been no reason for him to pursue this course of action. Section 401(b) of the Academy's Disciplinary System Regulations cautions:

> "The decision as to whether an individual will report a Midshipman for an Honor Violation rests solely with the individual observing the violation. This decision is one of the gravest responsibility. It is based on whether, in his judgment, the violator is capable of assuming the high standards of personal integrity required of a member of the Regiment. Is he entitled to continue being a Midshipman?"

Neither Lt. Gay nor anyone else at the Academy advised Lightsey before the Honor Board hearing that that proceeding, wherein he was forced to defend himself against an allegation of cheating before fifteen of his peers, was a mere sham which Lt. Gay, Captain Krinsky and the rest of the Academy were free to ignore. Indeed, the Academy's own regulations make it clear that such is not the case.

The Academy has no rules or regulations which vest any other authority with original jurisdiction over allegations of cheating. Nor are there any provisions for reviewing a finding of "not guilty" by the Board. There is therefore no basis for remanding this case to the Academy.

Under the circumstances, Lt. Gay's initial suspicions that plaintiff was cheating may have been reasonable. Since this was a disciplinary matter, Lt. Gay properly brought his suspicions before the Honor Board. "When regulations prescribe specific steps to be taken to insure due process, they must be substantially observed." *Friedberg v. Resor*, 453 F.2d 935, 938 (2d Cir.1971). When those specific steps have been substantially observed, as they were here, the result must be adhered to. Once the Honor Board found Lightsey "not guilty," the Academy was bound by its regulations to respect that verdict. The Academy's failure to do so constitutes arbitrary and capricious agency action. 5 U.S.C. § 706(2)(A). This determination does not involve any undue interference with the proper and efficient operation of the Academy, because the Court requires only that the Academy carry out the procedures and regulations it created for itself. *Smith v. Resor, supra*, 406 F.2d at 146.

Finally, submission by Lt. Gay of a charge of cheating to the Honor Board, followed by his refusal to abide by their verdict, prompts the Court to question the Academy's good faith as to this entire affair. *Connelly v. University of Vermont and State Agricultural College*, 244 F.Supp. 156, 161 (D.Vt.1965).

The above constitutes this Court's findings of fact and conclusions of law. For all the above reasons, it is the judgment of this Court that Midshipman Lightsey's test paper of February 10, 1983 should be credited as scored by the computer. To the extent his rights to take other examinations depend solely on that score, those rights should be adjusted accordingly. The Clerk is directed to enter judgment.

SO ORDERED.