LUELLA K. SULLIVAN, ADMINISTRATRIX OF ESTATE OF EUGENE V. SULLIVAN, v. CREDIT RIVER TOWNSHIP AND OTHERS.

217 N. W. 2d 502.

April 19, 1974—No. 43838.

*Grannis & Grannis* and *Patrick A. Farrell,* for appellants.

*Helgesen, Peterson, Engberg & Spector* and *Robert J. Tennessen,* for respondent.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Edward J. Schwartzbauer,* for Harry A. Murphy, Sr., James Moen, and The Concerned Citizens of Credit River, amici curiae.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Yetka, JJ., and reconsidered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

Plaintiff, Eugene B. Sullivan, sought a writ of mandamus to compel the town board of Credit River Township, Scott County, to rescind its action of December 2, 1971, wherein the board revoked its earlier approval of a landfill site proposed by plaintiff. The Scott County District Court issued an alternative writ commanding the township to reinstate its approval or show cause why it did not do so. The matter was tried to the court, and thereafter the writ was made absolute. Credit River Township, its town board, and its clerk appeal from an order denying their motion for a new trial. We affirm.

On May 11, 1971, plaintiff requested a special meeting of the town board so that it could consider his proposal to convert cer-

tain farmland into a sanitary landfill. Pursuant to a call by the town clerk, a special meeting was held in the town hall on May 14, 1971. In spite of the obvious importance of the subject matter, no notice of the meeting was given to the public, and no members of the public were present at the meeting. A second meeting between plaintiff and the town board took place on May 18, 1971, at the town hall. Again no public notice was given, and no members of the public were present. A third meeting took place on May 28 in the farmhouse of a member of the town board. No public notice was given, but a few neighbors, apparently not more than 8 or 10, attended the meeting. No records or minutes of any of these three meetings were kept by the town clerk.

After the May 28 meeting, plaintiff prepared a written document which approved his use of the land as a sanitary landfill and personally carried it to the three members of the town board on June 2, 1971, at their homes. Each of them signed the written document of approval. On Thursday, June 3, 1971, plaintiff entered a contract to purchase the farm on which the proposed landfill was to be located. Subsequently, plaintiff made preliminary plans for the site, obtained county approval, and, according to the findings of the trial court, expended over $10,000 for an engineering survey, attorneys' and accountants' fees, and other expenses in reliance upon the town board's approval.

Although no state law directly required approval of the local governing body for a landfill site, a comprehensive plan for solid waste disposal adopted by the Metropolitan Council applicable to metropolitan counties does require such approval. Metropolitan Development Guide, Solid Waste Management Policy No. 20. The Minnesota Pollution Control Agency (PCA) has sole statutory authority to issue permits for landfill operations, but a PCA permit could be issued only if the site conformed to the Metropolitan Council's comprehensive plan pursuant to Minn. St. 473D.07. State law requires each metropolitan county, after completion of the council's comprehensive plan, to submit a solid waste site report. § 473D.04. The site in question in this suit was

included in Scott County's preliminary report due July 1, 1971. The town board was advised by Scott County to recommend possible sites and was told, apparently by the PCA, that the county would recommend sites if the town board did not. It was this background that resulted in plaintiff's approaching the town board for approval of his proposal.

Alarmed residents, upon learning that the town board had approved the site as a sanitary landfill, circulated a petition containing objections to the plan and one requesting that a special meeting be held. Thereafter, on December 2, 1971, the town board held another meeting to discuss the proposed project. On this occasion, in addition to keeping minutes, notice of the time and place of the meeting was published in a local newspaper, and notice was posted at the Credit River Township garage (where the people of the township vote), on the road leading to the proposed landfill, and on a road "in the northwestern part of the township." Nearly 100 local citizens attended the December 2 meeting, and when a vote was taken, it was clear that a majority disapproved of the landfill site. It was at this meeting that the town board voted two to one to reject plaintiff's request for approval of his sanitary landfill plan.

Two issues are presented in this appeal. First, whether the board was required to give notice to the public of the meetings at which it approved plaintiff's plan. Secondly, whether the town board is estopped from rescinding its approval even if public notice of the meetings at which the proposal was discussed and approved should have been given.

Minn. St. 1971, § 471.705, states as follows:

"Except as otherwise expressly provided by law, *all meetings,* including executive sessions, of the governing body of any school district however organized, unorganized territory, county, city, village, town or borough and of any board, department or commission thereof, *shall be open to the public.* The votes of the members of such governing body, board, department or commission on any action taken in a meeting herein required to be open

to the public shall be recorded in a journal kept for that purpose, which journal shall be open to the public. The vote of each member shall be recorded on each appropriation of money, except for payments of judgments, claims and amounts fixed by statute." (Italics supplied.)

The critical question is what constitutes a meeting open to the public, as required by the statute. It is the judgment of this court that a meeting of which the public is unaware is not such a meeting. To constitute a public meeting, there must be adequate, timely notice to the public of the time and place of the meeting. The statute itself does not expressly require such advance notice to the public. However, the general rule of statutory construction is that every statute is understood to contain by implication, if not by its express terms, all provisions necessary to effectuate its object and purpose. 17B Dunnell, Dig. (3 ed.) § 8949; 82 C. J. S., Statutes, § 327. The language of the statute directing that meetings be open to the public is meaningless if the public has no knowledge that the meeting is to take place. Therefore, we believe that the statute, by implication, requires adequate notice of the time and place of the meeting. The mere fact that the meeting-room door is unlocked is not sufficient compliance with the directive of the statute.

In reaching this decision, we do not hold that such notice must be given for regularly scheduled meetings of public bodies if the times, dates, and locations of such regular meetings are available to the public upon reasonable inquiry. Nor would we require additional notice for any meeting which is adjourned to a specific time and place. We do hold that public notice is required to be given for all special meetings, including the type involved in this case, except, as noted below, those called for emergency purposes where the giving of such notice is impractical or impossible.

The timeliness and mode of giving public notice may be left to the reasonable discretion of the governing body. Notice in a newspaper is not essential; it may consist of a posted notice at certain predesignated locations, such as the public hall or other

locations determined by the governing body, so long as the public has a reasonable opportunity to be aware of the places in which such notices will regularly be posted.

In all cases, notice of the meeting may be dispensed with in a situation which requires immediate emergency action. In determining what constitutes such an emergency, the governing body should be guided by considerations of whether the situation calls for immediate action involving the protection of the public peace, health, or safety. See, 56 Am. Jur. 2d, Municipal Corporations, §§ 353, 354.

The attorney general of Minnesota has issued an opinion interpreting § 471.705 in much the manner that we here adopt. Opinions Attorney General, No. 63a-5, 5 Minn. Legal Reg. No. 2, p. 3, February 2, 1972. In the course of his opinion, the attorney general expressed sentiments with which we generally agree:

"The fundamental purpose of these provisions [Minn. St. 1971, § 471.705] 'is to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences.' *Lindahl v. Independent School District No. 306,* [271 Minn. 164] at 167, 133 N. W. 2d [23] at 26. The provisions are also intended to afford the public an opportunity to present its views to the board. However, the purpose of these provisions is frustrated if the public has no advance knowledge of the time and place of such meetings. Thus, in order to fully effectuate this purpose it is necessary to imply from these provisions a requirement that the council give advance notice to the public of any special meeting where matters are to be acted upon which have not been raised at a prior public meeting or hearing of the council."

In reaching this decision, it is important to stress that § 471.705 applies equally to all governing bodies described therein, and therefore the statute should not be less strictly construed for meetings of townships than for those of any other governmen-

tal unit. Many matters of great consequence to local residents are considered by town boards, including apparently the question of the location of sanitary landfills, which, while having entirely different characteristics, are direct descendants of the former town dump. The fact that nearly 100 persons appeared at the meeting of which notice was given to the public, while very few residents or none at all attended the three previous meetings where no notice was given, is ample evidence of the public interest involved in the board's determination.

In our judgment the people's right to know is too precious to yield to the claims of a governing body that it is inconvenient or impractical to inform the public of its meetings. Unfortunately, our history is replete with instances of misdirected governmental actions when the people have not had an opportunity to voice their views in matters of great public concern. We believe, therefore, that our interpretation of the open meeting statute is consistent with its purpose and intent.

Notwithstanding the lack of notice, however, the decision of the trial court must be affirmed because the statute is directory rather than mandatory since it fails to provide a method for enforcement and does not specify that actions taken at a meeting which is not public shall be invalid.[1] We have indicated that a

---

[1] Minn. St. 645.241 provides as follows: "When the performance of any act is prohibited by a statute, and no penalty for the violation of the same shall be imposed in any statute, the doing of such act shall be a misdemeanor." This statute is inapplicable in this case because the public meeting statute is not a prohibitive statute and as such is not subject to criminal enforcement.

It should be noted that Minn. St. 1971, § 471.705, was amended by L. 1973, c. 680, § 1, to add a subdivision 2, effective May 1, 1974. Subd. 2 reads in its entirety as follows: "Any person who violates subdivision 1 shall be subject to personal liability in the form of a civil penalty in an amount not to exceed $100 for a single occurrence. An action to enforce this penalty may be brought by any person in any court of competent jurisdiction where the administrative office of the governing body is located. Upon a third violation by the same person connected with the same governing body, such person shall forfeit any further right

statute which does not declare the consequences of a failure to comply may be construed as a directory statute. State, by Lord, v. Frisby, 260 Minn. 70, 108 N. W. 2d 769 (1961). Several other jurisdictions have clearly stated that if a statute lacks a penalty clause it is directive rather than mandatory. State ex rel. Ferro v. Oellermann, 458 S. W. 2d 583 (Mo. App. 1970); State ex rel. Werlein v. Elamore, 33 Wis. 2d 288, 147 N. W. 2d 252 (1967); In re Rice, 35 Ill. App. 2d 79, 181 N. E. 2d 742 (1962); Adler v. City Council of City of Culver City, 184 Cal. App. 2d 763, 7 Cal. Rptr. 805 (1960); Gowanlock v. Turner, 42 Cal. 2d 296, 267 P. 2d 310 (1954); Laramie Rivers Co. v. Le Vasseur, 65 Wyo. 414, 202 P. 2d 680 (1949); State ex rel. Mitchell v. Heath, 345 Mo. 226, 132 S. W. 2d 1001 (1939). See, also, 82 C. J. S., Statutes, § 376. Violation of a directory statute does not result in the invalidity of the action taken. State, by Lord, v. Frisby, *supra;* 82 C. J. S., Statutes, § 374.[2]

Because the action of the board taken on June 2, 1971, is not invalidated by failure to give notice to the public, and because, as the trial court found, plaintiff had expended in excess of $10,000 in reliance upon the board's approval, we hold that,

---

to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving. The court determining the merits of any action in connection with any alleged third violation shall receive competent, relevant evidence in connection therewith and, upon finding as to the occurrence of a separate third violation, unrelated to the previous violations issue its order declaring the position vacant and notify the appointing authority or clerk of the governing body. As soon as practicable thereafter the appointing authority or the governing body shall fill the position as in the case of any other vacancy."

[2] 82 C. J. S., Statutes, § 374, states: "* * * [W]hen a mandatory statute is invoked courts have no discretion in its administration except to enforce it as written. While noncompliance with a directory provision of a statute does not invalidate a proceeding, there is nevertheless a duty to comply even with purely directory provisions, as nearly as practicable, and the provisions of a directory statute may not be ignored to the prejudice of one making timely objection."

under the facts of this case, the town board is estopped to rescind the approval. Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. 2d 588 (1948).

Affirmed.

YETKA, JUSTICE (concurring specially).

I concur in the majority decision that defendant board is estopped from rescinding its original approval of plaintiff's plan. City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. 2d 361 (1941); Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. 2d 588 (1948).

However, I differ with the majority decision regarding the interpretation of Minn. St. 1971, § 471.705. The court has determined that the language in that statute which indicates "all meetings * * * shall be open to the public" requires notice to the public in some but not all instances. The statute is completely silent as to notice. It was passed originally in 1957 and amended at least twice since that date.[1] Neither amendment added a requirement of notice. Moreover, the most recent amendment to the section, introduced in the 1973 session of the legislature, contained originally a requirement of notice which was deleted during the legislative process.[2]

Once the court has determined, however, that notice is contained by implication in the statute, it seems inconsistent to me to compel notice of some but not all meetings. The statute speaks of *all,* not *some,* meetings. Matters of extreme importance are as likely, indeed perhaps more likely, to come up at emergency meetings than at regular meetings. I would require notice of *every* meeting, whether a general, special, or emergency meeting. I would hold that notice should consist at the very least of posted notice on the town, village, or city bulletin board at the regular meeting place of the governing body.

---

[1] L. 1967, c. 462, § 1; L. 1973, c. 680, §§ 1, 3.

[2] S. F. 1480, as originally introduced, contained this language: "The public must be given timely and reasonable notice of all meetings of such bodies * * *."

In addition, a governing body either by special notice, by minutes of its meetings, or by bylaws, or a combination of any of the three, all properly printed in its official newspaper could thereby give notice not only to the public but to the news media as well of all regular meetings and most special meetings of the public body. Where a special or emergency meeting must be called where formal published notice cannot be given in the legal newspaper, in addition to posted notice, the proper official of the governing body should attempt to give notice to the area news media by a method selected and incorporated in the bylaws of the public body, which method could vary according to the size of the community and the type of public body involved, but could still be one reasonably calculated to give such notice to the news media.