**Donnell J. GREEN, Appellant.**

v.

**John F. LEHMAN, Jr., Secretary of the Navy, and William P. Lawrence, Vice Admiral, U.S. Navy, Superintendent, Appellee.**

**No. 83–1521.**

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1984.

Decided Sept. 27, 1984.

---

Weldon Leroy Maddox, Baltimore, Md., for appellant.

J. Frederick Motz, U.S. Atty., Juliet A. Eurich, Asst. U.S. Atty., Baltimore, Md., Donald M. Hill, Commander, JAGC, USN, Capt. John M. Meighan, Jr., JAGC, USN, and LCDR Thomas N. Ledvina, JAGC, USN, Washington, D.C., for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HALLANAN, District Judge.*

HALLANAN, District Judge.

This appeal requires us to consider certain challenges to the actions taken by the Superintendent of the United States Naval Academy and the Secretary of the Navy with respect to the disenrollment of a Midshipman from the Academy and the Order directing him to report for active duty.

Former Midshipman First Class Donnell J. Green brought this action in the United States District Court for the District of Maryland on July 27, 1981, seeking a temporary restraining order and permanent equitable relief to restrain the Appellees from disenrolling him from the Naval Academy and ordering him to active duty. He also

---

* The Honorable Elizabeth V. Hallanan, United States District Judge for the Southern District of West Virginia, sitting by designation.

sought damages for claimed violations of his civil rights.

The District Court granted Green's request for temporary relief, but later granted summary judgment for the Appellees on the equitable claims. Green was granted leave to amend that portion of his complaint which sought damages with the admonition that the district court's jurisdiction with respect to those claims was limited by the Tucker Act.[1] *Green v. Lehman,* 544 F.Supp. 260 (D.Md.1982).

Subsequently, that complaint was dismissed because of Green's failure to observe the district court's admonition and restrict his damage claims to the parameters of the Tucker Act.[2] The court's dismissal on Tucker Act grounds is essentially unchallenged here.

### I.

Appellant Green was admitted to the Naval Academy in 1977 after having served in the United States Marine Corps for the preceding three years. He completed his first three years of study at the Academy in good standing academically and his conduct was satisfactory.

During the first months of his final year, however, Appellees contend, and the record supports their claim in this regard, Appellant Green's overall performance substantially deteriorated. He was placed on "conduct probation" by the Commandant of Midshipmen and warned that further unsatisfactory behavior would subject him to a recommendation for discharge after he had been assigned 150 demerits, the total allowed by the Academy for the entire year, prior to his completion of the first half of the academic year.

Thereafter, when Appellant Green received his semester grades which showed he had earned a 1.80 semester average on a 4.00 scale, he was automatically placed on academic probation as a result of the Academy's academic standards requiring midshipmen to maintain an average of at least 2.00 each semester.

The record shows that rather than improving, Appellant Green's conduct and academic performance subsequently worsened. He was found guilty of an aggravated assault upon a fellow midshipman, his roommate, with a pair of scissors in which the victim was cut in the leg and chest. For this infraction, Appellant Green was assigned 200 demerits, which placed him well over the allowable limit for the year. Additionally, prior to the completion of proceedings on the assault charge, Green was found to have committed another infraction—an unauthorized absence from the Academy—for which he was assigned an additional 75 demerits.

Green's academic performance further declined the following semester when he earned a semester average of only 1.19.

Appellant's unsatisfactory conduct led his company officer to institute proceedings against him in the Academy's three-tiered Military Performance Board process, which culminated on April 10, 1981, when, after a full hearing, the Academy's Academic Board voted unanimously to recommend that Green be disenrolled for "insufficient aptitude to become a commissioned officer in the naval service."[3]

---

1. 28 U.S.C. § 1346.

2. In his second amended complaint, Green sought $1,500,000 in compensatory damages and $1,000,000 in punitive damages. 28 U.S.C. § 1346(a)(2) provides in pertinent part that with respect to actions against the government "founded either upon the Constitution, or any Act of Congress...," the jurisdiction of the District Courts extends only to those cases "not exceeding $10,000 in amount."

3. This action was taken pursuant to 10 U.S.C. § 6962 which provides:

§ 6962. Midshipmen: discharge for unsatisfactory conduct or inaptitude
(a) The Superintendent of the Naval Academy shall submit to the Secretary of the Navy in writing a full report of the facts—
(1) whenever the Superintendent determines that the conduct of a midshipman is unsatisfactory; or
(2) whenever the Academic Board unanimously determines that a midshipman possesses insufficient aptitude to become a commissioned officer in the naval service.
(b) A midshipman upon whom a report is made under subsection (a) shall be given an

On April 16, 1981, the Superintendent of the Academy recommended to the Secretary of the Navy that Green be disenrolled for insufficient aptitude and on July 24, 1981, Green was notified of the Order discharging him from the Academy and transferring him to active duty in the United States Marine Corps Reserve for three years effective July 27, 1981.

Meanwhile, Green's academic performance had come within the scrutiny of the Academic Board and on July 15, 1981, the Superintendent of the Academy reported to the Secretary of the Navy that the Board had voted non-retention of the Appellant on May 18, 1981, because of his academic deficiency.[4] This notification pointed out that Green had previously been recommended for disenrollment for insufficient aptitude and that his case was being processed separately pursuant to 10 U.S.C. § 6962.

Following notification of his discharge and transfer to active duty, Green commenced the action from which this appeal arose.[5]

## II.

In granting summary judgment for the Appellees on Appellant Green's claims for equitable relief,[6] the district court determined that it had no jurisdiction to act in the matter because of the lack of a justiciable controversy.

Specifically, the court below determined that although Green was disenrolled from the Academy for insufficient aptitude pursuant to 10 U.S.C. § 6962,[7] since his discharge from the Academy was imminent based upon his academic deficiency pursuant to 10 U.S.C. § 6963, a review of Green's challenges to the § 6962 procedure and to the statute itself would be tantamount to rendering an advisory opinion. The court noted that Green did not challenge the recommendation that he be discharged for academic deficiency, and further opined that such a challenge could not be successfully made.

In so holding, the district court relied upon *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), where the Court defined a justiciable controversy as one "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241, 57 S.Ct. at 464 (Citations omitted). The district court reasoned that since Appellant Green would have been disenrolled for academic deficiency regardless of any finding upholding his challenge to his discharge for insufficient aptitude, consideration of his claims would be futile.

With respect to Green's transfer to active duty, the district court held that the Secretary of the Navy had full authority to implement the transfer pursuant to 10 U.S.C. § 6959,[8] notwithstanding Green's

opportunity to examine the report and submit a written statement thereon. If the Secretary believes, on the basis of the report and statement, that the determination of the Superintendent or of the Academic Board is reasonable and well founded, he may discharge the midshipman from the Naval Academy and from the naval service.

**4.** The statutory provision governing discharge from the Academy for academic deficiency, 10 U.S.C. § 6963, provides:
§ 6963. Midshipmen: discharge for deficiency
Midshipmen found deficient at any examination shall, unless the Academic Board recommends otherwise, be discharged from the Naval Academy and from the naval service.

**5.** Succinctly stated, Green challenged the process which culminated in his disenrollment,

claiming that 10 U.S.C. § 6962 is unconstitutionally vague and that the procedures utilized in effectuating his disenrollment violated his constitutional rights to due process of law and equal protection of the laws.

**6.** Green sought injunctive relief requiring the Academy to reinstate him, or, alternatively, conferral of a bachelor's degree and a commission in the United States Armed Forces.

**7.** *See,* n. 3, *supra.*

**8.** 10 U.S.C. § 6959 provides:
Midshipmen: agreement for length of service
(a) Each midshipman who is a citizen or national of the United States shall sign an agreement that, unless sooner separated, he will—
(1) complete the course of instruction at the Naval Academy;

claim that he had never signed the agreement contemplated by the statute.

The district court further rejected Appellant Green's claim that only wilful actions by him could result in a call to active duty, expressly refusing to adopt the reasoning employed by the court in *Dougherty v. Lehman*, 688 F.2d 158 (3 Cir.1982), *after remand*, 711 F.2d 555 (3 Cir.1983).[9]

It is from these determinations that Appellant Green's primary claims of error arise on appeal.

### III.

■ Green first urges that the district court erred in granting summary judgment for Appellees because it failed to consider his challenges to his discharge under 10 U.S.C. § 6962 for insufficient aptitude.

The crux of his argument in this regard is that while the proceedings against him under § 6962 for insufficient aptitude in fact became final, the recommended dismissal for academic deficiency pursuant to § 6963 was never consummated. Thus, he argues, the district court erred in holding that there was no justiciable controversy before it because Green would have been discharged for academic deficiency in any event. He claims that to permit such a finding would, in effect, allow courts to uphold administrative action based upon reasons not assigned by the agency itself. *See* e.g., *Love v. Hidalgo*, 508 F.Supp. 177 (D.Md.1981).

We disagree. The district court exercised a good deal of common sense as well as sound legal logic in determining that no justiciable controversy was before it. First, the Academic Board's finding of academic deficiency was clearly substantiated by Green's academic record and the finding was unchallenged below. Further, had the finding been challenged, it would not have been subject to judicial review because the finding is purely an objective one which allows no room whatsoever for an exercise of discretion. A midshipman either makes the grades or he does not. *See, Wasson v. Trowbridge*, 382 F.2d 807 (2 Cir.1967).

Second, the ultimate decision with respect to disenrollment from the Academy for academic deficiency rests solely with the Academic Board under 10 U.S.C. § 6963. The Secretary of the Navy has absolutely no discretion to reverse the determination of the Academic Board that it does not wish to recommend retention of an academically deficient midshipman.

Finally, Green's argument that to sanction the decision made by the district court here would allow courts to rummage through the record to find a basis to substantiate the agency action which was not assigned by the agency itself is misplaced under the particular facts of this case. The Academic Board had acted on Appellant Green's deficient status and voted not to retain him at the Academy. All that remained to finalize his disenrollment on those grounds was the formal Order by the

(2) accept an appointment and serve as a commissioned officer of the Regular Navy, the Regular Marine Corps, or the Regular Air Force for at least five years immediately after graduation; and

(3) accept an appointment as a commissioned officer in the reserve component of the Navy or the Marine Corps or as a Reserve in the Air Force for service in the Air Force Reserve and remain therein until the sixth anniversary of his graduation if an appointment in the regular component of that armed force is not tendered to him or if he is permitted to resign as a commissioned officer of that component before that anniversary. If the midshipman is a minor and has parents or a guardian, he may sign the agreement only with the consent of the parents or guardian.

(b) A midshipman who does not fulfill his agreement under subsection (a) may be transferred by the Secretary of the Navy to the Navy Reserve or the Marine Corps Reserve in an appropriate enlisted grade or rating, and, notwithstanding section 651 of this title, may be ordered to active duty to serve in that grade or rating for such period of time as the Secretary prescribes but not for more than four years.

9. The Court below was presented with and considered only the unreported district court's opinion, the decision cited above having been rendered on August 26, 1982, subsequent to the court below's opinion dated March 23, 1982. The appeal after remand cited above concerned Dougherty's claim for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

Secretary of the Navy who, it must be noted, had previously ordered Green's disenrollment for insufficient aptitude. Appellees argue that to reverse the district court on this basis would be to elevate form over substance. We agree and find that the court below did not commit error in determining that no justiciable controversy was before it. Regardless of the validity of Green's challenges to his § 6962 discharge for inaptitude, the fact remains that he was academically deficient and the Academic Board had acted upon that deficiency.

IV.

We likewise find no merit in Green's claim of error in the district court's finding that he could be transferred to active duty pursuant to 10 U.S.C. § 6959 following a discharge under 10 U.S.C. § 6963 for academic deficiency.

At the outset, we note that the district court did not have the benefit of our decision in *Wimmer v. Lehman*, 705 F.2d 1402 (4 Cir.1983) when considering Green's claims in this regard. Nevertheless, the result it reaches conforms with *Wimmer*, in which we held that the Navy may transfer to active duty a midshipman discharged from the Academy under § 6962.

Appellant Green argues that *Wimmer* should be distinguished because § 6962 provides that the Secretary *"may* discharge the midshipman from the Naval Academy and from the naval service" whereas § 6963 declares that midshipmen found academically deficient *"shall,* unless the Academic Board recommends otherwise, be discharged from the Naval Academy and from the naval service." (emphasis added). He contends that the Secretary had no choice under § 6963 but to discharge him from the service as well as the Academy. But he ignores the language indicating that the Secretary should issue both discharges *unless* the Academic Board recommends otherwise. Under the applicable Navy regulation, the Academic Board's failure to recommend Green's discharge from the service counted as a rec-

ommendation that he be transferred to active duty. *See* Bureau of Naval Personnel Manual, Article 3850400. Accordingly, the Secretary's order complied with the statute.

Furthermore, sound policy dictates that the Navy should be able to transfer to active duty midshipmen discharged from the Academy for academic deficiency. As we said in *Wimmer:*

> It would be a great waste for the government to lose its investment in training what proved to be unsatisfactory midshipmen if it could not put them in a lesser spot which they were capable of filling. To construe section 6962 as necessarily requiring discharge from the entire service would produce a purposeless and most unfortunate result.

*Wimmer* at 1408. The same reasoning applies to § 6963.

Neither do we find error in the district court's determination that the Navy's failure to produce an "agreement" setting forth the specific language contemplated by § 6959 was not fatal to its Order transferring Appellant to active duty. On the contrary, we find the court's rationale in this regard to be quite well stated and correct.

V.

We have scrutinized Green's other allegations of error and find them devoid of merit. Accordingly, the decision of the United States District Court for the District of Maryland is affirmed.

AFFIRMED.