AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

SAMOA AVIATION, INC., an American Samoa
Corporation, dba SAMOA AIR, Defendant

High Court of American Samoa
Trial Division

CA No. 56-89

December 7, 1989

Before REES, Associate Justice, OLO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Arthur Ripley, Jr., Assistant Attorney General.
For Defendant, John L. Ward II

On Motions for New Trial and Modification of Judgment:

Plaintiff American Samoa Government (hereinafter "ASG") sued for the eviction of its lessee Samoa Aviation, Inc. (hereinafter "Samoa Air") from a parcel of ASG property including an aircraft hangar, alleging various flaws in the lease agreement. We denied the requested relief. 11 A.S.R.2d 144 (1989). ASG then moved for a new trial and Samoa Air, which had prevailed on all issues except its request for attorney fees, also moved for modification of the judgment.

We took these motions under advisement primarily in order to re-examine our holding that, where a lease agreement fails to include an inflation adjustment clause required by statute (A.S.C.A. § 37.2020) to be included in all such agreements, the lease should not be held invalid at the instance of the drafting party but should instead be subject to

66

reformation or construction to conform to the statutory requirement. The question is one of first impression in American Samoa and yet arises from a type-situation that must recur fairly often in places having greater numbers of people, contracts, and statutes. The summary nature of this eviction proceeding having caused our original opinion to be written without prior citation of authorities by either party, we requested post-judgment memoranda and argument on what remedy is appropriate where parties to a written contract have omitted a provision required by statute to be included.

On reconsideration it appears that this question is indeed one on which there has evolved a "majority rule." The rule, to which all or nearly all courts facing the question have adhered, is stated by Corbin:

> State legislatures have sometimes enacted that a specified provision shall be included in every contract of a particular class thereafter made. Such a statute is one that prescribes the legal operation of contracts, not one that affects factual interpretation. If in exact obedience to the law, the specified provision is integrated into a written contract in exact terms, the provision must be . . . given effect. . . . Exactly the same result is reached even though the parties knew nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary.

Corbin on Contracts § 551 at 200-01 (1951) (footnotes omitted). In reliance on this rule, courts have consistently treated statutes drafted according to the formula of A.S.C.A. § 37.2020 not to invalidate nonconforming contracts, but to make them conform by operation of law. In effect, the courts read the words, "No contract shall omit provision X" to mean, "Every contract shall include provision X." *See Green v. Lehman*, 544 F. Supp. 260 (D. Md. 1982), *aff'd*, 744 F.2d 1049 (4th Cir. 1984);[1] *Board of School Commissioners v. Hahn*, 22 So.2d 91 (Ala.

---

[1] *Green* was a suit by a former midshipman contesting his dismissal from the Naval Academy and transfer to active duty as an enlisted man. The Navy relied on 10 U.S.C. § 6959, providing in pertinent part that "[e]ach midshipman . . . shall sign an agreement" to complete the course of instruction at the Academy and that "[a] midshipman who does not fulfill his agreement" may be transferred to active duty. Although the Navy "fail[ed] to produce an 'agreement' setting forth the specific language contemplated by § 6959," 744 F.2d at 1054, the Court of Appeals affirmed the trial court's holding that the

1945); *Bakker v. Aetna Life Ins. Co.*, 190 N.E. 327 (N.Y, 1934);[2] *Sterling Engineering & Construction Co. v. Town of Burrillville Housing Authority*, 279 A.2d 445 (R.I. 1971);[3] *Jones v. Preferred Accident Ins. Co.*, 275 N.W. 897 (Wis. 1937).[4]

These opinions are generally premised on the idea that "the laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." *Von Hoffman v. Quincy*, 71 U.S. (4 Wall.) 535, 550 (1866). As Corbin observes, this formal justification is a fiction and in most cases not even a very useful one, having little to do with why the provisions in question ought to be enforced. *See* Corbin § 551 at 197-98. It would seem more accurate to treat contracts falling afoul of the "No contract shall be entered into unless" formula as a special instance of the contract that is partly illegal but in some respects enforceable.

In the present case ASG seems to assume that if it can prove it violated the law by entering into its agreement with Samoa Air, it will automatically be entitled to walk away from the agreement. On the contrary, however, "it is not the case that all unlawful agreements are

---

provision required by § 6959 "is as much a term of the contract plaintiff had executed, as if it had appeared in bold print." 544 F.2d at 263.

[2] This law is mandatory, and any insurance company which issues a policy without this provision violates the law. Should the provision be omitted, the courts will read into the policy the provision in order to give effect to this salutary regulation.
190 N.E. at 328.

[3] While the record does not disclose the reason or reasons for the absence of the required arbitration clause in the subject agreement, the legislative mandate cannot be ignored. It is a fundamental rule that all contracts are made subject to any law prescribing their effect or conditions to be observed in their performance. The statute is as much a part of the contract as if the statute had been actually written into the contract. This is so even though the parties knew nothing of the statute and did not include the provision or even though they knew of the legislation and expressly agreed upon the exact contrary.
279 A.2d at 447.

[4] "Because that provision is required by statute, it is mandatory and obligatory . . . . and cannot be varied or waived by the private conventions of the parties." 275 N.W. at 898. A contract omitting the provision in question was therefore held to have the same legal effects as an otherwise identical contract that did contain such a provision.

*ipso facto* void. If the denial of relief is disproportionately inequitable the right to recover will not be denied." *Jackson Purchase Rural Electric Cooperative Assoc. v. Local Union 816*, 646 F.2d 264, 267 (6th Cir. 1981); *see* 14 Williston on Contracts § 1630A (3d ed. 1972). Nor is judicial enforcement of such agreements generated solely by a desire to avoid harsh results. As this Court has previously observed,

> Except in those rare cases where the legislature has specifically defined the consequences of a particular kind of illegal contract, courts are left to "a delicate balancing of factors for and against enforcement of the particular agreement." E. Farnsworth, Contracts § 5.1 at 328. Illegal conduct should of course be deterred and punished, and judicial process should not be available to those who seek only to consolidate or recover ill-gotten gains. But unenforceability may not always deter or punish, and may sometimes even reward the principal wrongdoer. Then, too, "caution . . . is . . . especially necessary in these times when so much of commercial life is governed by regulations of one sort or another, which may easily be broken without wicked intent." *St. Johns Shipping Corp. v. Joseph Rank Ltd.* [1957] Q.B. 267 (Devlin, J).

*Enekosi v. Moaali'itele*, 3 A.S.R.2d 81, 83 (1986), *aff'd*, 6 A.S.R.2d 49 (1987).

Confronted with an agreement whose making was prohibited by statute but which, having been made, the statute does not declare to be void, a court finds itself in a conceptual hall of mirrors in which neither statutory interpretation nor contract law seems to yield an answer without one last reference to the other. The legislature is presumed to be aware of the usual tenets of contract formation, interpretation, and enforcement; although the legislature has the power to change these rules, it is more likely to want to preserve them insofar as such preservation is not inconsistent with the precise objective of a particular enactment. Similarly, contracting parties are presumed to know the law and, except in cases where a contrary intention clearly appears, to want their contract to conform thereto. Courts have therefore attempted to enforce the rule made by the legislature while avoiding unnecessary damage to adjacent principles such as fidelity to the intentions of the parties and the avoidance of forfeitures.

69

Such damage cannot, however, be eliminated altogether; derogating from the common law is, after all, the main thing statutes do. *See* Pound, *Common Law and Legislation*, 21 Harv. L. Rev. 383 (1908). Courts declining to invalidate contracts made in contravention of some statute or public policy have done so by reference to a wide variety of traditional doctrines and techniques, some of them wrenched from their traditional contexts.

Thus, for instance, the majority rule discussed by Corbin deals with the absence of a required clause by declaring that the clause is really present after all, having been inserted automatically "as if . . . in bold print" by the very statute that might otherwise have rendered the contract illegal. *Green v. Lehman, supra*, 544 F.2d at 263; *see generally* cases cited herein at pages 67-68, *supra*.

Other courts have dealt with nonconforming contracts as we did in our original opinion, by extending the concept of "reformation" --- a term of art usually reserved for provisions specifically agreed upon by the parties but inadvertently omitted or rendered incorrectly when the agreement was reduced to writing --- to cover situations in which the written contract faithfully recorded the agreement of the parties but inadvertently failed to include some provision or other formal requirement without which the law would deem the agreement unenforceable. *See, e.g., Oatman v. Niemeyer*, 278 P. 1043 (Cal. 1929); *Gaylord v. Pelland*, 47 N.E. 1019 (Mass. 1897).

Another approach is to interpret a statute as merely "directory" rather than "mandatory" where "it fails to provide a method for enforcement and does not . . . . declare the consequences of a failure to comply . . . ." *Sullivan v. Credit River Township*, 217 N.W.2d 502, 504 (Minn. 1974).[5] Yet another is to hold a government entity estopped to assert its own violation of its own laws as a means of avoiding its otherwise lawful obligations. *See, e.g., United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973); *Board of Education of Village of Estancia*

---

[5] In practice the "directory/mandatory" distinction appears to be conclusory rather than analytical. The court does not generally confine its inquiry to the language of the statute, but examines all the circumstances of the case to determine whether the contract should be enforced and *then* classifies the statute as mandatory or directory. One result of this technique is that some awfully mandatory-looking statutes get classified as merely directory. *See, e.g., Sargo, II, Inc., v. City of Philadelphia*, 488 F. Supp. 1045 (E.D. Pa. 1980); *Sullivan, supra*, 217 N.W.2d at 504, and cases cited therein.

*v. Woodmen of the World*, 77 F.2d 31 (3d Cir. 1935); *Sullivan, supra*, 217 N.W.2d at 507.

Finally, it is well settled that a court can excise the illegal portions of a contract and enforce the remainder, with or without other compensating adjustments in the contractual obligations of the parties; or may modify an illegal term to make it conform to the law. *See, e.g., Alston Studios, Inc., v. Lloyd V. Gress & Associates*, 492 F.2d 279 (1974) (covenant not to compete); *Shantilal Brothers, Ltd., v. K.M.S.T. Wholesales, Inc.*, 9 A.S.R.2d 62 (1988) (usurious interest rate).

Although each of these techniques may leave something to be desired from the standpoint of pure theory, together they comprise a regime under which courts can more effectively advance the legislative purpose underlying regulatory statutes --- not to mention the intentions of contracting parties and traditional notions of fair play --- than would be possible under a rule of absolute unenforceability. *See Enekosi v. Moaali'itele, supra*, 3 A.S.R.2d at 83, quoted at page 69 *supra*. In practice this regime allows the enforcement, albeit in part or as modified, of many if not most contracts made in contravention of statute or public policy:

> Out of the welter of common law rules regarding illegality has come the general principle that illegal contracts are unenforceable only where (1) a statute explicitly provides that contracts contravening it are void or (2) where "the interest in [the contract's] enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 320(1) at 53 (Tent. Draft No. 12, March 1, 1977).

*California Pacific Bank v. Small Business Administration*, 557 F.2d 218, 219 (9th Cir. 1977). The factors a court should consider in determining whether the interest in enforcement is outweighed by a strong public policy include "the justified expectations of the parties; the forfeiture that would result from non-enforcement of the agreement; any special public interest in enforcement; the strength of the public policy that the agreement violates, as shown by legislation or court decision; the likelihood that refusal to enforce will further that policy; and the seriousness of the misconduct." *Jackson Purchase Rural Electric Cooperative Assoc. v. Local Union 816, supra*, 646 F.2d at 267.

In the present case almost all of these factors militate strongly against avoidance of the lease agreement. A.S.C.A. § 37.2020 prohibits the making of certain contracts but does not provide that such contracts shall be absolutely void. Even if we decline to follow the rule that the required language is deemed to be part of every contract by operation of law, we are left with a contract that complied with all applicable laws and regulations but one. The only "misconduct" in which Samoa Air may be said to have engaged was to sign an apparently lawful agreement drafted by ASG. There is no evidence that the required clause was omitted by any reason but inadvertence; Samoa Air did sign a covenant to obey all territorial laws pertaining to the premises; soon after being notified of the absence of the inflation adjustment clause, Samoa Air expressed its belief that it was in fact bound to pay the required adjustments. See Finding of Fact 24.

As we observed in our original opinion, A.S.C.A. § 37.2020 does not appear designed to punish conduct regarded as *malum in se* by effecting a forfeiture; rather, it is designed to protect the government in a specific way that can be accomplished at least as effectively by imposing on Samoa Air the obligation to pay the required adjustment as by declaring the whole agreement void.[6] This is particularly true under the circumstances of the present case, in which the record rather clearly shows that the absence of an inflation adjustment clause is not a genuine point of controversy between ASG and Samoa Air. Rather, this was one of a series of technical grounds on which ASG sought to evict Samoa Air in order to accommodate another prospective tenant. See Findings of Fact 9, 16, 17, 18, 19, 21, 23, 24, 25. Nor does this preference seem to have been generated by the opportunity to negotiate a higher rent, a concern which would be arguably related to the statutory defect. On the contrary, it appears that ASG was at one point willing to surrender the hangar to the other prospective tenant for free. See Finding of Fact 25.

For these reasons it appears that our original decision on this question was correct, although in retrospect we regret the use of the word "reformation" to describe the enforcement of the lease agreement as modified by the requirement of A.S.C.A. § 37.2020. We reaffirm our judgment that ASG has the right to enforce, in accordance with

---

[6] A.S.C.A. § 37.2020 was enacted in 1978 by the Fifteenth Legislature of American Samoa as Public Law 15-69. The preamble to P.L. 15-69 noted that "inflation is a persistent problem which may not abate" and that it was therefore "deemed appropriate to fix policies which will assure that real property of the Government of American Samoa will be wisely used and that the market value thereof will be realized."

A.S.C.A. § 37.2020, "a provision satisfactory to the lessor whereby the rentals or lease price is adjusted upward or downward at intervals to adjust for inflation"; and that the lease is otherwise enforceable as written. To eliminate uncertainty about the appropriateness of any particular provision in this and other cases, the Court urges ASG to comply with the requirement imposed by A.S.C.A. § 37.2020 that it adopt a rule in accordance with the Administrative Procedure Act selecting particular "recognized indexes" of real property values for the purposes of this section.

ASG also argues that the lease was invalid because it was altered after being signed by the Governor but before being presented to Samoa Air, and also because of a purported retroactive "rejection" by the Deputy Territorial Registrar. We reject these arguments for the reasons stated in our original opinion. The lease as presented to Samoa Air was "approved in writing by the Governor," who was free to arrange the internal affairs of his office as he saw fit. Assuming for the sake of argument that the Deputy Territorial Registrar would have had power to cancel a previously recorded lease agreement had there been something genuinely wrong with it, an aggrieved party would have the right, "at any time, [to] apply to the High Court for direction or redress." A.S.C.A. § 4.1106. Samoa Air has exercised that right in this case, and the Deputy Registrar's action has been reversed on the ground that the substantive bases therefor were without merit.

With regard to Samoa Air's request for attorney fees, such awards are generally regarded as within the Court's discretion even where authorized by statute. While we have held ASG's position in this litigation to have been incorrect, we believe there was a genuine controversy between the parties and that an award of attorney fees is not appropriate.

Accordingly, the motions are denied.

It is so ordered.