*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2247**

In re Application of Gourley Brothers, LLC for a Water Appropriation Permit

**Filed August 18, 2014
Remanded
Connolly, Judge**

Minnesota Department of Natural Resources
Permit No. 2013-1423

Amanda E. Prutzman, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, Minnesota (for relators)

Amanda P. Hungerford (pro hac vice), The Humane Society of the United States, Washington, D.C. (for individual relators)

Christopher R. Fenton (pro hac vice), Shearman & Sterling, LLP, New York, New York (for relator The Humane Society of the United States)

Jack Y. Perry, Maren F. Grier, Briggs & Morgan, P.A., Minneapolis, Minnesota (for respondent Gourley Brothers, LLC)

Lori Swanson, Attorney General, Fiona B. Ruthven, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Natural Resources)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Relators challenge respondent Minnesota Department of Natural Resources' (MDNR) issuance of a water appropriation permit, arguing that (1) they have standing to appeal, (2) MDNR's decision was arbitrary and capricious because it is not supported by findings of fact or reasons, (3) MDNR's decision was based on unlawful procedure because it did not consider all comments received and was based on an incomplete permit, and (4) MDNR's decision was not supported by substantial evidence. We remand for additional findings.

## FACTS

Respondent Gourley Brothers LLC (Gourley) proposed a total-confinement hog feedlot in Todd County. The feedlot is expected to house approximately 2,930 sows, 300 nursery pigs, and 750 gilts.

In 2012, the Gourley facility underwent environmental review. *See* Minn. Stat. Ch. 116D; Minn. R. 4410.1000. The Minnesota Pollution Control Agency (MPCA), acting as the responsible government unit (RGU), prepared an environmental assessment worksheet (EAW). MPCA completed and distributed the EAW in July 2012. It concluded that the facility "does not have the potential for significant environmental effects," and issued a negative declaration on the need for an environmental impact statement (EIS). Relators did not appeal the negative declaration on the need for an EIS.

On May 3, 2013, Gourley submitted an application to MDNR for an individual water-appropriation permit for its feedlot. The application identified two wells from

which water would be appropriated and the maximum rate at which water would be taken. Gourley attached a "well and boring record," which (1) identifies the location of each well, (2) provides information about the geological formations into which the wells are drilled, and (3) provides information on the static water level of the aquifer from which the wells take water. MDNR requested additional information from Gourley, including property tax information, and a detailed breakdown of estimated daily and annual water usage, which Gourley subsequently provided.

On October 4, 2013, MDNR issued Gourley a water-appropriation permit. The permit enables the facility to appropriate up to 8,000,000 gallons of water annually. On November 1, relators submitted a written demand for a hearing on the issuance of the permit under Minn. Stat. § 103G.311 (2012). On November 5, MDNR denied this request, concluding that relators are not one of the parties permitted to demand a hearing under Minn. Stat. § 103G.311, subd. 5(a). This certiorari appeal follows.

## D E C I S I O N

### I. Do relators have standing?

Respondent MDNR argues that "relators lack standing to bring the present appeal because they have not shown any injury in fact caused by the issuance of the permit." We disagree.

"Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State v. Philip Morris, Inc.*, 551 N.W.2d 490, 493 (Minn. 1996) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731-32, 92 S. Ct. 1361,

3

1364-65 (1972)).  The issue of standing may be raised at any time.  *In re Horton*, 668 N.W.2d 208, 212 (Minn. App. 2003).

"[I]t has long been established that a person has standing to invoke judicial review of agency action only if that person suffers 'injury in fact' as a consequence of that action."  *Matter of Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 797 (Minn. 1992).  To satisfy the injury-in-fact requirement, relators "must demonstrate that they have suffered actual, concrete injuries caused by the challenged conduct."  *Alliance for Metro. Stability v. Metro Council*, 671 N.W.2d 905, 913 (Minn. App. 2003.)  Economic injury or the potential for economic injury may be sufficient to establish standing.  *In re Application of Crown CoCo, Inc.*, 458 N.W.2d 132, 135 (Minn. App. 1990).  "An organization can assert standing if its members' interests are directly at stake or if its members have suffered an injury-in-fact."  *Builders Ass'n of Minn. v. City of St. Paul*, 819 N.W.2d 172, 177 (Minn. App. 2012).

Relators in this case are the Humane Society of the United States (the Humane Society) and the following individuals: Russell Anderson, Randall Anderson, Katrina Downes, Aimee Goodwin, Corey Goodwin, Travis Winter, Joel Walsh, Amy Walsh, and Mary Soupir.  The individual relators rely on the same aquifer that Gourley will use in its feedlot operation.  Relators indicate that their domestic water use has been negatively affected since the Gourley operation began and report that the water pressure in their homes has decreased and their wells have tested positive for coliform bacteria since the Gourley facility became operational.  These effects have caused relators to expend economic resources to monitor their wells or obtain alternative water sources.  Because

the "primary goal of the standing requirement is to ensure that the factual and legal issues before the courts will be vigorously and adequately presented," we conclude that relators' interests are sufficient to confer standing. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007).

Additionally, the Humane Society submitted evidence that its members have suffered an injury in fact as a result of MDNR's issuance of the Gourley water-appropriation permit. The Humane Society seeks to combat environmental degradation caused by concentrated animal-feeding operations. One of the individual relators in this case is a member of the Humane Society. Because a Humane Society member has demonstrated an injury in fact and its members' interests are directly at stake, we conclude that the Humane Society has standing.

## II. Was MDNR's decision arbitrary and capricious?

"[D]ecisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977). This court "will not disturb an agency's decision as long as the agency's determination has adequate support in the record as required by the substantial evidence test." *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 7 (Minn. 2003). "Substantial evidence consists of: (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than 'some evidence'; (4) more than 'any evidence'; and (5) evidence considered in its

entirety." *Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006) (quotation omitted). An agency's decision is arbitrary and capricious if the agency

> (a) relied on factors the legislature never intended it to consider, (b) entirely failed to consider an important aspect of the problem, (c) offered an explanation for the decision that runs counter to the evidence, or (d) rendered a decision so implausible that it could not be ascribed to a difference in view or the result of agency expertise.

*Watab Twp. Citizen Alliance v. Benton Cnty. Bd. of Comm'rs*, 728 N.W.2d 82, 89 (Minn. App. 2007), *review denied* (Minn. May 15, 2007). The party challenging the agency decision has the burden of proving grounds for reversal. *Markwardt v. State Water Res. Bd.*, 254 N.W.2d 371, 374 (Minn. 1977).

Relators argue that MDNR's decision to grant Gourley's water-appropriation permit was arbitrary and capricious because MDNR issued the permit based on an incomplete application and the permit was not supported by written findings of fact or reason. We agree that there are insufficient findings for this court to conduct meaningful appellate review.

Groundwater use permit applications are not complete until the applicant has submitted:

> (1) a water well record . . . information on the subsurface geologic formations penetrated by the well and the formation or aquifer that will serve as the water source, and geologic information from test holes drilled to locate the site of the production well;

(2) the maximum daily, seasonal, and annual pumpage rates and volumes being requested;

(3) information on groundwater quality in terms of the measures of quality commonly specified for the proposed water use and details on water treatment necessary for the proposed use;

(4) an inventory of existing wells within 1-1/2 miles of the proposed production well or within the area of influence, as determined by the commissioner. The inventory must include information on well locations, depths, geologic formations, depth of the pump or intake, pumping and nonpumping water levels, and details of well construction; and

(5) the results of an aquifer test completed according to specifications approved by the commissioner. The test must be conducted at the maximum pumping rate requested in the application and for a length of time adequate to assess or predict impacts to other wells and surface water and groundwater resources. The permit applicant is responsible for all costs related to the aquifer test, including the construction of groundwater and surface water monitoring installations, and water level readings before, during, and after the aquifer test.

Minn. Stat. § 103G.287, subd. 1(a) (2012). But "[t]he commissioner may waive an application requirement in this subdivision if the information provided with the application is adequate to determine whether the proposed appropriation and use of water is sustainable and will protect ecosystems, water quality, and the ability of future generations to meet their own needs." Minn. Stat. § 103G.287, subd. 1(b) (2012).

"If the commissioner concludes that the plans of the applicant are reasonable, practical, and will adequately protect public safety and promote the public welfare, the commissioner shall grant the permit." Minn. Stat. § 103G.315, subd. 3 (2012). "The

commissioner shall make findings of fact on issues necessary for determination of the applications considered. Orders made by the commissioner must be based upon findings of fact made on substantial evidence." Minn. Stat. § 103G.315, subd. 2 (2012). The commissioner shall consider the following factors, as applicable, in reviewing and analyzing the submitted data:

> (1) the location and nature of the area involved and the type of appropriation and its impact on the availability, distribution, and condition of water and related land resources in the area involved;
> (2) the hydrology and hydraulics of the water resources involved and the capability of the resources to sustain the proposed appropriation based on existing and probable future use;
> (3) the probable effects on the environment including anticipated changes in the resources, unavoidable detrimental effects, and alternatives to the proposed appropriation;
> (4) the relationship, consistency, and compliance with existing federal, state, and local laws, rules, legal requirements, and water management plans;
> (5) the public health, safety, and welfare served or impacted by the proposed appropriation;
> (6) the quantity, quality, and timing of any waters returned after use and the impact on the receiving waters involved;
> (7) the efficiency of use and intended application of water conservation practices;
> (8) the comments of local and regional units of government, federal and state agencies, private persons, and other affected or interested parties;
> (9) the adequacy of state water resources availability when diversions of any waters of the state to any place outside of the state are proposed;
> (10) the economic benefits of the proposed appropriation based on supporting data when supplied by the applicant.

Minn. R. 6115.0670, subp. 2 (2013).

Although it appears based on the record that Gourley submitted most of the required information with its permit application, the application does not contain information concerning groundwater quality in terms of the measures of quality commonly specified for the proposed water use or details on water treatment necessary for the proposed use. The application also does not contain an inventory of existing wells within the relevant geographic area. The commissioner may very well have waived these requirements because much of this information is contained in the EAW and negative declaration on the need for an EIS. But there is nothing in the record to suggest that MDNR adopted MPCA's findings or that the commissioner waived any application requirement.[1] And to facilitate appellate review, an administrative agency must state the facts and conclusions essential to its decision with clarity and completeness. *People for Envtl. Enlightenment & Responsibility, Inc. v. Minn. Envtl. Quality Council*, 266 N.W.2d 858, 871 (Minn. 1978).

Gourley argues that MDNR substantially complied with the applicable statutory requirements, noting that

> the law does not mandate in all cases strict and literal compliance with all procedural requirements. Technical defects in compliance which do not reflect bad faith, undermine the purpose of the procedures, or prejudice the rights of those intended to be protected by the procedures will

---

[1] The only indication that MDNR reviewed MPCA's findings and adopted them to supplement Gourley's application is a handwritten note in the "Accelerated Review of Ground Water Permit Applications" form. The note states that MDNR referenced the EAW comments on (1) the surface waters within 1/4 mile of the Gourley facility and (2) the residence and public water supply within one mile of the facility. It does not refer to any specific finding.

> not suffice to overturn governmental action, particularly where . . . substantial commitments have been made.

*See City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 391 (Minn. 1980); *Manco of Fairmont, Inc. v. Town Bd. of Rock Dell Twp.*, 583 N.W.2d 293, 295 (Minn. App. 1998), *review denied* (Minn. Oct. 20, 1998). We disagree. To determine whether the doctrine of substantial compliance applies to a specific ordinance or rule, we determine first whether the ordinance or rule in question is mandatory or directory. *See Manco*, 583 N.W.2d at 295. To determine whether a statute is mandatory rather than directory, we consider whether the statute expresses the consequences of a failure to comply with its provisions; if it does, it is mandatory. *Sullivan v. Credit River Twp.*, 299 Minn. 170, 176-77, 217 N.W.2d 502, 507 (1974). Because there is no consequence listed for failing to issue written findings in granting a water appropriation permit, the statute might be construed as directory. But the doctrine of substantial compliance is more appropriately geared toward situations where there is a minor deviation in procedure, not, as Gourley argues, where a state agency completely disregards explicit statutory requirements. Consequently, we conclude that the doctrine of substantial compliance is not applicable to these circumstances.

MDNR relies on the fact that the permit was issued "on the basis of statements and information contained in the permit application, letters, maps, and plans submitted by the applicant and other supporting data, all of which are made part hereof by reference," to argue that it fulfilled the requirement that it provide written findings when granting the permit. We disagree. Prior to applying for the permit at issue, the Gourley feedlot

10

operation underwent environmental review. MPCA prepared an EAW to determine whether the operation would potentially result in significant environmental effects. After completing the EAW, MPCA issued a negative declaration on the need for an EIS, which contains 75 findings of fact and concludes that the Gourley operation will not result in significant environmental effects.

But there is nothing specific in the permit that indicates that MDNR considered the relevant permitting factors or adopted MPCA's findings and conclusions. MDNR did not provide any findings or conclusions supporting the issuance of the Gourley permit, and therefore, we cannot conduct meaningful appellate review of its decision. We therefore remand for additional findings.

## III. Was MDNR's decision to issue the permit supported by substantial evidence?

Relators also argue that even if MDNR's issuance of Gourley's permit was supported by sufficient findings, MDNR's decision to grant the water appropriation permit was not supported by substantial evidence because MDNR did not consider threats to water quality and public health. As stated above, the commissioner's orders must be based upon findings of fact supported by substantial evidence. Minn. Stat. § 103G.315, subd. 2. Substantial evidence means "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *White v. Minnesota Dept. of Natural Res.*, 567 N.W.2d 724, 730 (Minn. App. 1997) (quoting *Cable Cmmc'ns Bd. v. Nor-West Cable Cmmc'ns P'ship*, 356 N.W.2d 658, 668-69 (Minn. 1984) (quoting *Reserve Mining Co.*, 256 N.W.2d at 825)).

11

MPCA conducted environmental review of the Gourley facility under Minn. R. 4410.1000. MPCA determined that the facility "does not have the potential for significant environmental effects based on the type, extent, and reversibility of impacts related to water quality that are reasonably expected to occur." Relators did not appeal this conclusion. Relators are appealing MDNR's decision to grant Gourley a water appropriation permit; they are not challenging MPCA's negative declaration on the need for an EIS. To the extent that relators attempt to challenge MPCA's conclusion that the Gourley facility will not result in significant environmental effects, that issue is not properly before this court. Moreover, because MDNR's issuance of Gourley's water appropriation permit was not supported by sufficient findings to conduct appellate review, we cannot conclude whether any findings are supported by substantial evidence. *See* Minn. Stat. § 103G.315, subd. 2.

**Remanded.**